GREENHALL v. CARNEGIE TRUST CO. et al.

(District Court, S. D. New York.   August 5, 1910.)

**1. Witnesses (§ 400*)—Effect of Testimony—Impeachment.**

A party calling a witness only vouches for his truthfulness to the extent that he cannot thereafter impeach his general credibility in the formal ways recognized by law; the party being permitted to show that the facts stated by the witness are untrue.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1268; Dec. Dig. § 400.*]

**2. Bankruptcy (§ 172*)—Corporations—Interest of Bankrupt—Sale of Assets—Avoidance.**

Where between the passing of a bankruptcy adjudication and the appointment of a trustee the assets of a corporation in which the bankrupt was a large stockholder were sold at the instance of the majority stockholders in such a manner and for such a consideration as to prejudice the bankrupt's estate, and to apply the bankrupt's interest to an indebtedness owing to a single creditor, the sale was subject to vacation by the trustee after his appointment, suing as a stockholder for alleged abuse by the majority.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. § 172.*]

**3. Bankruptcy (§ 299*)—Action by Trustee—Defect of Parties.**

An objection that there was a defect of necessary parties in a suit by a bankrupt's trustee to set aside a sale of the assets of a corporation which was prejudicial to the bankrupt's estate was available only so far as justice could not be done without the presence of the omitted parties, and would not be allowed to prevent relief which could be given as between the parties before the court, which would not affect the rights of the omitted parties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 448; Dec. Dig. § 299.*]

**4. Bankruptcy (§ 311*)—Claims—Preference—Vacation.**

Where a trust company, in connection with a sale of the assets of a corporation which was voidable as against the estate of a stockholder, assumed obligations of the stockholder owing to certain creditors, such obligations either directly at law or indirectly in equity became valid until set aside as against the stockholder's estate in bankruptcy on the vacation of the transaction, unless the obligees were aware of the whole situation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

**5. Bankruptcy (§ 185*)—Avoidable Transfers—Affirmance—Election.**

Where after a transfer of a corporation's assets, which was voidable as against the estate in bankruptcy of a stockholder, the stockholder's trustee filed a bill to set aside the transfer on the theory that the stockholder, being the owner of all the securities of the corporation, was in fact the corporation itself, and that the conveyance was in fraud of the trustee's rights, and prayed that the purchaser of the assets be compelled to account and refund all moneys and property of the bankrupt received by it to the trustee, and in an amended bill prayed that the assets and securities be returned to the corporation, due to a change in the allegation as to the stockholder's ownership of the corporate stock, the filing of the original bill did not amount to an election by the trustee to affirm the sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 239; Dec. Dig. § 185.*]

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. ELECTION OF REMEDIES (§ 10\*)—WHAT CONSTITUTES—"ELECTION."**

A mistaken assertion of an alleged right cannot be an "election" because an election can consist only in a choice between two inconsistent remedies, existing and not fancied.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 13; Dec. Dig. § 10.\*

For other definitions, see Words and Phrases, vol. 3, pp. 2329–2336.]

**7. BANKRUPTCY (§ 302\*)—SETTING ASIDE TRANSFER—PLEADING—AMENDMENT.**

Where a bankrupt's trustee filed a bill to set aside a transfer of the securities of a corporation in which the bankrupt was a stockholder, and alleged that the bankrupt being the owner of all the securities was in fact the corporation itself, and that the conveyance was in fraud of the trustee's rights, praying an accounting and a refunding to the trustee of all the moneys and property of the bankrupt received by the purchaser, the court was authorized to permit an amendment on it appearing that the bankrupt was only a partial owner of the corporation's stock, so as to allege that fact, and to pray a refundment to the corporation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 456, 457; Dec. Dig. § 302.\*]

**8. PLEADING (§ 36\*)—CONCLUSIVENESS—EFFECT OF AMENDMENT.**

Where an original bill has been amended so as to change the allegations and prayer, the original bill, while admissible as an admission, does not constitute an estoppel as against the complainant.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 86; Dec. Dig. § 36.\*]

**9. BANKRUPTCY (§ 390\*)—DISCHARGE—RIGHTS AS TO PENDING LITIGATION.**

Where a transfer of a corporation's assets was invalid as against the trustee in bankruptcy of a stockholder, and the effect of a vacation thereof would be to resuscitate debts of the stockholder which would have been paid by the purchaser out of the corporation's property had the transfer been sustained, the bankrupt never having been discharged and the time having expired within which a discharge could be granted to him, the court would, upon the transferee's objection, compel his joinder as a party and the litigation of the issue of the payment of such debts as between him and the purchaser.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 627–636; Dec. Dig. § 390.\*]

Bill by Charles L. Greenhall, as trustee in bankruptcy of Joseph Fleischman, against the Carnegie Trust Company and others. Decree for complainant.

This is a final hearing of a bill in equity brought by a trustee in bankruptcy to rescind a contract which has been performed and which was executed on March 27, 1909, between the National Center Realty Company, a New York corporation, and one Moorehead, acting in the interest of the Carnegie Trust Company. The National Center Realty Company was the owner in fee of a hotel in the borough of Manhattan, Le Marquis, situated between Fifth and Sixth avenues. This property was incumbered by three mortgages, the first in the sum of $350,000, the second in the sum of $29,000, and the third, $17,740.92. There were also valid liens on the property for taxes, etc., amounting to $31,660.11, making in all $428,401.03. The title to the hotel had originally and in March, 1908, been in the bankrupt Joseph Fleischman in fee, and upon that day he conveyed to the company his interest, his wife joining in the deed to release her dower. In the exchange for the property, Fleischman received out of the total capital stock of 600 shares, himself 498, his wife received 100 shares, and 2 shares were given to two persons who by the testimony are said to have paid for them in full. The complainant does not challenge the organization of the company, but asserts that Fleischman

---

remained the owner of 498 shares of stock from that day until his adjudication in January, 1909. By the contract in question Moorehead, acting for the Carnegie Trust Company, was to accept the fee of the property subject to the liens, aggregating $428,401.03, and was to pay certain indebtedness of Fleischman, as follows: To the Carnegie Trust Company, $65,672.84, to the Northern National Bank, $7,768.45, to C. C. Dickinson, $1,215.13, and a further indebtedness to the Carnegie Trust Company of $19,490.80. Moorehead was also to pay to the realty company a balance of $2,451.75. The aggregate of all these payments amounted to $525,000, which was, in fact, the agreed valuation stated in the contract between the parties. In addition, the National Center Realty Company was to convey all its stock to the vendee, and to get the resignation of the three directors of that company. Included within the terms of the contract and as part of the purchase price were also certain bonds and stocks of a New York corporation known as "Roman Baths," all of which were at that time in the possession or under the control of the Carnegie Trust Company, and a description of which is given below. The National Center Realty Company executed a deed on the 29th day of March, 1909, to Moorehead, and he paid to the realty company the sum of $626.68, the difference between which and the balance of $2,451.75 specified in the contract being due to some adjustments of expenses, interest, and the fees of Limburg, counsel for the stockholders other than Fleischman. Moorehead also delivered all of the securities of Roman Baths to Limburg, to be distributed, as will appear later. The proof does not show whether the indebtedness due from Fleischman to Dickinson and the bank has in fact been paid. Fleischman was adjudicated a bankrupt on January 19, 1909, and a trustee was appointed in April, 1909, all the transactions heretofore mentioned being between the date of adjudication and the appointment of the trustee. Moorehead and the Carnegie Trust Company both knew of his bankruptcy and that he had been adjudicated before any of the transactions recited.

Prior to any proceedings in bankruptcy against Fleischman, he had been the owner of substantially all the stock of a corporation known as Fleischman's Baths, owning the lease of a property on the corner of Forty-Second street and Sixth avenue, in the borough of Manhattan. Upon this property he had leased part of a large building, among other purposes, to run Turkish and Roman baths, and had procured much of the money to furnish this property from the Carnegie Trust Company. The documents creating all this indebtedness mentioned the fact that he borrowed the money for the purpose of building the Fleischman Baths. At the time the Carnegie Trust Company lent him this money it took notes of the Fleischman Baths, indorsed by Fleischman. The money so obtained Fleischman used in performance of a contract between himself and Fleischman's Baths, by which he was bound to erect the building and furnish it, and in exchange was to obtain the total issue of stock of those baths, which stock he pledged, in turn, to the Carnegie Trust Company as collateral security for these advances so made by them in the prosecution of the work. Fleischman's Baths also issued a series of bonds, secured by a mortgage, and covering all its property. It does not definitely appear to whom these bonds were issued in the first instance or who became the owner, but Fleischman swears that he, who in some way got possession of them, delivered them to the trust company as substituted collateral for the stock, which he thereupon took back to his own possession. Subsequently the trust company filed a creditor's sequestration bill against Fleischman's Baths in the United States Circuit Court for this district. An order of sale passed in that suit and the property was purchased by one Graham, who paid for it by turning in the bonds. Fleischman's Baths had no property except that which was covered by the bonds, and consequently the whole assets passed to Graham. He thereupon organized a New York corporation by the name of Roman Baths, conveyed the assets to this corporation in return for an issue of stock and bonds, and a part of these he transferred to the Carnegie Trust Company, presumably proportionate to the trust company's holdings in the bonds of Fleischman's Baths, although that fact does not definitely appear. These securities, or at least a part of them, were those which the trust company was to deliver under the contract of March 27, 1909.

At the time of his filing of the petition in bankruptcy against Fleischman, the record ownership of the stock in the National Center Realty Company was as follows: 100 shares in the name of Julia Fleischman, the bankrupt's wife, 498 shares in the name of Fleischman, 1 share each in the name of the two original directors or their assignees. Prior to that time Fleischman, for a valid consideration, had borrowed money of George R. Read & Co., and as collateral security had indorsed and delivered certificates for 298 shares of stock. The 200 shares of stock which he did not pledge to Read he had indorsed and 100 shares he says he had given to his niece, Clara Simon, and 100 to his son, Rudolph Fleischman. Clara Simon testified that he gave her the shares of stock in question because of his unsuccessful investment of other property of hers, the whole management of her pecuniary affairs having been in his hands for some time. The son, Rudolph Fleischman, the bankrupt says, got the shares of stock because of advances to his father in a joint enterprise between them in the florist business. Fleischman also testifies that of the 298 shares of stock which he pledged to Read he had already given 100 to his wife upon her complaint that she had not received enough for her dower in the hotel property at the time of the organization of the National Center Realty Company. On March 29, 1909, at the time of the performance of the contract here in question, the trust company delivered the Roman Baths securities to one Herbert Limburg, who distributed them in the same proportion to Clara Simon, Rudolph Fleischman, Julia Fleischman, and Read & Co. as the holders theretofore had of the stock in the National Center Realty Company. George R. Read & Co. gave up that stock which they held as security and took stock and bonds of the Roman Baths in place thereof. The trust company at the same time received all the stock of the National Center Realty Company and the resignation of its directors.

Edmund L. Mooney, for complainant.
Garrard Glenn, for defendant Trust Co.

HAND, District Judge (after stating the facts as above). At the outset I must clear up the confusion which appears to have arisen from the fact that the complainant has called witnesses by whose testimony he does not wish to be necessarily bound. It cannot be too often repeated that to call a witness is not in any sense to vouch for the truth of what he says. It does, at least at law, prevent one from impeaching his general credibility in the formal ways recognized, but that is all. I shall not hesitate, and the master must not, to accept so much, and only so much, of any of the testimony as commends itself as reasonably true, regardless of whether it makes against the defendant or not. Of course, there must always be some evidence as the basis of a judicial conclusion, but the legal methods of inference from the evidence are absolutely dependent upon the usual processes of ordinary thought, and the law has never attempted to regulate them. If the master does not accept the stories of the Fleischmans to contradict the prima facie ownership arising from the stock records, coupled with Fleischman's statements in his schedules and elsewhere, he is free to do so, and I shall do so, if the issue becomes material.

The first and important consideration is whether the trustee as a stockholder in the realty company has been abused by the majority by the sale of its property. I shall disregard the question of whether under the law of New York a corporation may sell out all its assets without the unanimous consent of its stockholders, because I think that from any point of view this sale was voidable as against the trustee in bankruptcy acting in the right of the corporation. The con-

trolling consideration is the actual transaction between the realty company and the trust company. The written contract provides for the payment by the trust company of $525,000 and the securities of the Roman Baths. Since it is plain that from the point of view of the trustee in bankruptcy there was no cash paid beyond the trivial sum of about $2,000 and the assumption of about $428,000 of liens, the defendants are forced to disregard the words of the contract, and to insist that the transfer was in essence of the real property for the Roman Bath securities. In this effort to disregard the words of the contract, which represented the formal reduction of the parties' intent, they have recourse to the testimony of Limburg. I need not consider whether I might from any point of view disregard the contract as written, because Limburg's testimony does not bear out the contention in fact. He says that the cash which the Fleischmans hoped to get to run the Roman Baths was cut down by Dickinson for the very purpose of paying the indebtedness of the bankrupt to the trust company. "His (Dickinson's) only idea in going into this deal at all in behalf of the trust company was to make the trust company whole for the advances they had made. He regarded it as if, instead of offering $525,000, he was offering $450,000, whatever the difference might be."

We have, then, a contract in which the vendee offers the equivalent of $525,000 in cash and certain securities of unknown value. The value of the property had been appraised at $525,000, but there is no evidence that the vendee did not regard it worth as much more as the value of the Roman Bath securities, whatever that might be, a matter which remains entirely indefinite even yet. The vendee now insists that, since either the securities or a part of the cash consideration must be disregarded, I must disregard the cash consideration in so far as it was illegal. The result would be to assume that the securities made up the deficiency, and that the illegal part of the consideration—i. e., the cancellation of some $95,000 of Fleischman's debts—was added as a meaningless formality, not as a moving cause for the acquisition of the property. This is a mere inference of the mental attitude of the parties, which the vendee invites, and which I am, therefore, justified in meeting by a counter inference of precisely opposite result. This contract extinguished Fleischman's indebtedness, and so prevented any proof against his estate. Whether the value of that proof was great or small, it was a right of some value, and had the trust company, who were capably advised, supposed that the Roman Bath securities would alone have stood the test as an adequate consideration for the hotel, there was no need of adding anything about the payment of this indebtedness, which at once would direct attention to at least a possible preference so obtained. There is some negative reason, therefore, for asserting that these securities were not in fact worth any such sum. Such evidence is, however, not necessary to the complainant's case, because the contract speaks in their favor, and expressly says that the value of $525,000 is made up by canceling the indebtedness. The least the vendee can do is to put in some affirmative evidence of the value of these securities, so

as to show how they could have made up the necessary balance. This they have not attempted at all.

There is another aspect which is quite conclusive, and under which it appears that the Roman Bath securities were literally no part of the consideration at all. The evidence is not very full, but I think it is enough. The loans in question were all made for the purpose of completing Fleischman's Baths. While this is not expressly stated as to all the money, I think it is fairly inferable from the proof. Fleischman got some $140,000 or $150,000 in stock of Fleischman Baths under a contract or contracts by which he was to pay the expenses of making and furnishing Fleischman Baths. This stock he got par for par, and Fleischman Baths could have held him as the eventual obligor under this contract of subscription had they been compelled to pay any part of these expenses. Therefore, Fleischman, and not Fleischman Baths, was the primary obligor. When Fleischman got the money, he procured the indorsement of Fleischman Baths and deposited with the trust company as collateral all the stock as he got it on his contract. The trust company was, therefore, secured by the indorsement of Fleischman Baths and by the stock. Subsequently an issue of bonds of Fleischman Baths came out secured by a mortgage, of a part of which bonds in some way not disclosed Fleischman got possession. These he deposited with the trust company as substituted collateral in place of the stock, which was at once given back to him. It thus appears that the trust company held all the bonds of Fleischman Baths as collateral to secure the loans made by them to Fleischman, upon which Fleischman was the eventual obligor, and they therefore occupied the position of pledgee. I think it fairly inferable from Fleischman's testimony that this status applied to all the bonds of Fleischman Baths which the trust company held at the time of the foreclosure in the Circuit Court suit.

Now, these bonds were foreclosed by a sale of the property in the Circuit Court creditors' suit, and the trust company took over the property by turning in the bonds. Subsequently the property was reincorporated and became the Roman Baths, the trust company retaining of its securities a certain proportion and giving some to the Fleischman family. That sale, however, was not a foreclosure of Fleischman's interest in the bonds, and whatever securities the trust company got in the end in any form they necessarily held upon the same pledge as that under which they had originally held the bonds themselves. The change had affected the form of the property pledged, but not the relation of pledgor and pledgee. If A. assigned to B. as collateral on a loan a bond and mortgage of C., B. still holds the land as collateral after he has foreclosed, just as he once held the bond.

Dickinson's understanding of the relations was quite accurate, and he was capably advised. If he got back the advances, he had no further right to the collateral, and they formed and could form no part of the consideration at all. Fleischman was always entitled to them when he paid his debt. At least, if Fleischman was not, certainly some one other than the trust company was. I think this explanation is

the, obvious one of the whole transaction, and shows that the sole consideration for the hotel was the cancellation of Fleischman's debts and the small sum actually paid.

From no point of view, legal, equitable, or speculative, can one fairly look at this transaction except as including a payment of the indebtedness to the trust company, the bank, and Dickinson, nor should I have devoted so much time to it, had it not been the only attempt at a meritorious defense which is raised. Such a bargain was, of course, not tolerable to a court of bankruptcy. However, the defendants are right in saying that this is not an effort to get back the property of the bankrupt estate, because the estate had no property in the Hotel Le Marquis. The theory of this bill is that the trustee here sues as a stockholder who has been abused by the majority. Of course, the other stockholders might consent to the sale for any consideration they wished, including the cancellation of Fleischman's debts, but the trustee in bankruptcy could not, and did not. All parties knew that Fleischman was bankrupt, and that a trustee was imminent. The bill does not try to unravel a transaction made in the interim between adjudication and the appointment of a trustee in which the bankrupt has made an honest effort to preserve his estate for the trustee, nor do I need in the least to invoke the doctrine of the relation back of title, or, as Mr. Glenn calls it, the ex post facto title of the trustee. This is not a court of law, and I do not hold the vendees, because the trustee had title ab. initio. The whole transaction involved the conveyance of property in which everybody knew the bankrupt estate had an interest. They knew its consent was necessary, because the bankrupt whose consent they substituted had lost all his rights, unless, as they suggest, it was to preserve the estate as a kind of ad interim trustee in bankruptcy. Instead of accepting a consideration which was of value to the bankrupt estate, they accepted one which wholly disregarded his interests, and excluded him from any share in the consideration. It is idle, under such circumstances, to seek recourse to any purely legal rights. The trustee was the party beneficially interested, in fact, as stockholder, and they sold out the corporate assets for a consideration which was valueless so far as he went. The transaction would have been voidable had the debts so canceled been those of another, but it is in addition positively illegal in that a part of the property represented by the trustee's interest as a stockholder, has actually gone to the payment of one creditor, and has so created an illegal preference. It is therefore plain to me that the trustee might file a stockholder's bill.

It is not necessary, or, indeed, proper, at this time in the suit, to ascertain the quantum of Fleischman's holdings. He sues as a stockholder, and the relief he seeks is that his corporation be restored to the property which was obtained from it. It is only necessary for the trustee here to prove that he is, in fact, a stockholder. It is conceded that he is a holder of 198 shares, a third interest in the corporation, and the contention is plausible that he owns 298 shares and has an equity in at least 100 more, though upon that issue I make no decision. His interest is amply substantial to justify the intervention of a court

of equity, and the pliancy of the other assumed stockholders in accepting the payment of his debts as a part of the consideration, together with Fleischman's own statements ante litem motam, does not incline me to weigh very heavily their willingness to let the bargain stand, in the face of the trustee's acknowledged holdings.

There are but two other objections, both formal, which the trust company raises, which have any show of merit after the contract be once interpreted as I have interpreted it. The first is the defect of necessary parties, which would, of course, be fatal, and, the second, the trustee's election to affirm the bargain by the filing of the original bill.

As to the first objection, it is good only in so far as justice cannot be done without the presence of other parties. It is true, as the case stands, some relief cannot be given which I might give if other parties were present, because their rights cannot be affected while they are out of court. From this it may happen that the complainant will be hampered, or even entirely prevented, from effective relief by the conditions I must impose upon him. If, however, the fulfillment of those conditions will, in fact, maintain in statu quo the rights of any person not a party hereto, then there can be no defect of necessary parties. No one can complain because of the imposition of such conditions but the complainant, and the objection dies in the mouth of the defendants, who alone make it here.

This, therefore, brings up the question directly of the form of the decree, and I will take it up, therefore, at this point. The decree will first provide for the reconveyance to the corporation of the real property and for an account of profits in the meantime. The trust company will likewise assign to the receiver the realty company stock and its distribution among the various holders will have to be a part of the interlocutory proceeding. The restitution will include the redelivery of all the Roman Bath securities. In so far as these have passed into the hands of George R. Read, I cannot direct him to do this, because he is not a party to this suit, and the complainant will have to accomplish this by negotiation. The shares received by the Fleischmans I will direct them to return, since their attorney, Limburg, was aware of all the facts. Any transfer made by them since bill filed may be decided upon if that fact arises. I will not say how far it is affected with notice of a lis pendens. Should it prove impossible for any reason to procure the restitution of these shares, I will consider whether some other restitution will not be effective. I do not decide now that the only possible restitution in this case will be in specie. It will depend upon future developments. Butler v. Prentiss, 158 N. Y. 49, 63, 52 N. E. 652. If the defendants Fleischman have put it out of their control to restore these securities, I hardly should feel disposed to exonerate the trust company on that account. I regard them as both acting in concert.

The difficulties with regard to the obligations assumed by the trust company to the National Northern Bank and Dickinson are not so great. Those obligations, whether directly at law under Lawrence v. Fox, 20 N. Y. 268, or indirectly in equity, became valid till set aside unless both obligees were aware of the whole situation. Of course,

Dickinson was, but, as he is not a party, I cannot pass a decree in regard to him. Prima facie the obligation of the bank is good. I see nothing to do but to make it an absolute condition that the complainant secure the trust company for the payment of these obligations. When this is done, the trust company is protected and their original obligation to the obligees will not be affected. The only alternative is to allow them to be added as parties defendant, and that I have already refused to do as to these parties.

The interlocutory decree will therefore provide that the Fleischmans surrender to the receiver their Roman Bath securities, and that the complainant tender the consent of Geo. R. Read & Co. to deliver the shares held by them. The complainant will thereupon tender security to the trust company for its payments to the Northern National Bank and the estate of Dickinson. Upon the performance of these conditions a receiver of the hotel will be appointed and the trust company will assign all shares of realty company stock to the receiver, the relative ownership to be determined. Thereupon an accounting will be had before the special master which should bring in the small cash payment, and upon final decree all the equities will be definitely adjusted, and the deed delivered to the realty company. Should the Fleischmans fail to surrender the Roman Bath securities, the matter will come up on contempt proceedings under the interlocutory decree, which I will refer to the special master.

There remains the question of the trustee's election as evinced by the filing of the original bill. The first bill proceeded upon the theory that Fleischman, being the owner of all the securities of the realty company, was, in fact, the company itself, and that the conveyance to the trust company was in fraud of the trustee's rights. It prayed "that the said trust company may be compelled to account and to refund to your orator all moneys or property of the bankrupt received by it." I can see no affirmance of the contract in this. On its face it seeks a rescission of the whole contract by a redelivery of the real property, just as the present bill does. There is no inconsistency between the redelivery there asked to the complainant personally and a redelivery to the corporation as the amended bill asks. That divergence arose simply from the change between the allegations of Fleischman's total and partial ownership of the corporate stock.

What the trust company relies on is apparently a statement of the complainant personally, made in court, as to the frame of the bill. I confess I did not quite understand that statement when it was made, and I never have since. Apparently his theory was that he could sue to recover that proportion of the indebtedness canceled by the contract which Fleischman's holdings bore to the whole outstanding stock. That position, if I have correctly understood it, was not consistent with either bill, and was not sound in law. The contract was in fact fully performed and the trust company had received the real property in payment of its indebtedness. If the bill tried to get that property back, it was unraveling the transaction, as both bills try to do. All I can say for the third position is that it was wholly anomalous in any case. It seems to rest upon the assumption that it was a part of the contract that the trust company should pay over to the corporation a

part of the indebtedness canceled. Whatever this theory was, it was not in fact an election to affirm the contract, whatever the counsel may have thought who urged it, because the payment it sought to get was not included within the terms of the contract. It makes no difference that arguendo he stated that he did not mean to disturb the contract. What he was asking was something to which he had no right from any point of view. It "was not an election, but an hypothesis." A mistaken assertion cannot be an election because that must be "a choice * * * between two inconsistent remedies," existing, not fancied. Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828. It is not necessary to determine whether that decision goes so far as to make it only a mistaken choice if the elector is defeated for any cause because it is quite clear that the position here was as fruitless as to seek to impress a lien upon your own title as there.

The next question is of the propriety of the amendment, a question like all others reserved by the defendants with leave, notwithstanding their answer. The equitable grounds for the amendment were ample unless some rule of procedure prevents. Shields v. Barrow, 17 How. 129, 144, 15 L. Ed. 158, would certainly stand in the way, but I understand that case to have been overruled in substance, if not formally, by Hardin v. Boyd, 113 U. S. 756, 5 Sup. Ct. 771, 28 L. Ed. 1141, which throws the whole matter into the court's hands. The allegations of fact in the old bill may be good evidence upon this hearing against the complainant, but they are nothing more. Certainly they are no estoppel. As evidence they are not worthy serious consideration.

The trust company also raises the question of the restoration of Fleischman and Fleischman Baths to the status quo ante. So far as concerns Fleischman Baths, the objection is without substance. The corporate entity still exists, but without property of any sort, a mere theoretical personality, and a court of equity may disregard the fact that, though its debts were to be canceled by this agreement, they will not be revived. "De minimis non curat lex." So far as concerns Fleischman, the case is somewhat different, because it is not in proof that he has ever been discharged, and it is now too late to apply for a discharge. The result of this decree will be to re-establish against him a debt which is now canceled, or which he may insist that the obligee cancel. This debt would, it is true, have been paid out of property which in no sense belonged to him, and which indeed he had no right to have applied to his indebtedness. Nevertheless the trust company has an interest in the conclusion of Fleischman in this decree, so that, when they have parted with the res, he shall not be able to question their debt. As things now stand, the trust company will lose the fund and yet may have to fight the issue of its payment over again with Fleischman should they ever sue him on their debt. They have the right to have him brought in. If, however, the defendant insists upon this point, I shall, in spite of my former refusal, permit the complainant to amend again and bring in Fleischman. If they do that, they may also bring in Dickinson's estate, the Northern National Bank, and George R. Read. In this way they may succeed in making the restitution less onerous than I have felt obliged to do.

This will put it to the option of the trust company whether they prefer to stand upon the defect and take their chance of getting less restitution, or whether they prefer the decree as it is. In any case I am not disposed to compel this suit to be tried all over again, when the complainant has, as I think, a meritorious case, merely because before the hearing he erroneously dismissed the bill as to a party who has now proved to be a necessary party. Fleischman was fully examined and the facts were all brought out, so that there is extremely little probability that he can have any defense other than what I have already considered. The purpose of a court of equity is to do justice and to relieve from mistakes. If the defendant trust company, who is alone interested, cares to waive the point as to Fleischman within 10 days after the filing of this opinion by written stipulation, a decree may pass; if not, the complainant may file a supplementary bill bringing in the parties indicated, and then the issues as to them may be tried out in the October term. That a decree may be made without Fleischman is clear enough, if the defect is waived, because Fleischman's rights will not be affected by this decree if he is not a party. When sued on the debt, he can still plead payment, and he will be in as good a position to maintain his plea if the trust company has lost the property as if not. This decree will not conclude him, and he can show that the payment was in fact a good payment, just as well in that suit as he could in this. Thus the defect is one which only the trust company may raise, and which they may waive if Fleischman's rights be saved from the decree. He has no interest in the fund itself from any point of view, and its disposition hereafter is indifferent to him. Provided he retains all rights to insist that his debt is paid, he is not hurt. Therefore it is a defect which if not taken by answer or demurrer I could deal with under the fifty-third rule, and, as the case stands, it is personal to the trust company.