PITTSBURGH S. S. CO. v. SCOTT.
No. 10283.

Circuit Court of Appeals, Sixth Circuit.
Feb. 3, 1947.

---

Carl A. Schipfer, of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and George W. Cottrell, all of Cleveland, Ohio, on the brief; Carl A. Schipfer and W. Alexander Eldridge, both of Cleveland, Ohio, of counsel), for appellant.

S. Eldridge Sampliner, of Cleveland, Ohio, for appellee.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

A jury in the district court found for the plaintiff below [appellee here] and assessed his damages for personal injuries at two thousand, one hundred and twenty-five dollars in his first cause of action, brought under Section 33 of the Merchant Marine Act of 1920, U.S.C.A., Title 46, Section 688,[1] against the appellant, Pittsburgh Steamship Company. In the same complaint, a second and separate cause of action for maintenance and cure was brought against the same defendant for one hundred and fifty dollars, which was allowed by the jury verdict. On motion of appellant for judgment non obstante veredicto, the district court set aside the judgment on the action for maintenance and cure, but sustained the entry of judgment on the verdict of jury in the first cause of action.

Asserting that the verdict of the jury is contrary to the law and the evidence, appellant urges that the district court should have granted its motion for a directed verdict, made when plaintiff rested on his proof and renewed at the conclusion of all the evidence in the case. The jury verdict, buttressed by substantial evidence, has been upheld by the trial judge. It is perhaps a platitude to restate that an appellate court is not constrained to weigh evidence to determine upon which side preponderance appears.

The fact issue is simple. The appellee Benjamin D. Scott, at the time of his injury on November 21, 1941, was fifty-four years old and had been a seaman in the galley for twenty-two years of navigation on the Great Lakes. The highest rating which he had attained was that of second cook. On or about November 10, 1941, he shipped at South Chicago as porter on the steamer Henry C. Frick, owned by the appellee, Pittsburgh Steamship Company, made two voyages, and left the vessel on November 24th at Lorain, Ohio, three days after he was hurt.

Scott testified that, around eleven o'clock on the morning of November 21st, he was engaged in his regular duties of cleaning dirty pots and dishes in the kitchen when the Chief Cook, Elmer Thessler, walked up to him and said, "What's the matter—" The defendant's attorney interrupted with an objection as to what the cook may have said. The court ruled that the witness "needn't go into detail as to conversation", but should tell what happened. The plaintiff proceeded: "Well, he did say something rough and I didn't give him any answer, but he went back in the pantry. I went on washing, the first thing I knew he struck me in the back, he says, 'Get them out, get them out, old man, before I kill you.'" Upon renewed objection of the defendant, the judge instructed the jury to pay no attention to conversation. The plaintiff swore that the cook struck him three times in the "small part" of his back "as hard as he could give it to me" and that the blows would have felled him except for the support of the sink against which he was "pinned." The

[1] "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; * * *."

hardest blow struck was on the left side of his back near the backbone.

Plaintiff testified that Thessler warned him that he would kill him if Scott said anything about the occurrence. Therefore, he did not report it to the Captain until he was leaving the ship at Lorain and needed to secure a hospital "ticket" from that officer so that he could obtain admission to the United States Marine Hospital, which he was ordered to enter after he had been treated as an out-patient for two weeks by a marine doctor. He was confined to the hospital for two months.

Without wasting time to review the clinical history, it will suffice to state that we are not the least impressed with the argument of counsel for appellant that the verdict of the jury is excessive.

The master of the vessel, Captain Diamond, called as a witness by appellant, testified that while the Chief Cook is not a ship's officer he is in charge of the steward's department, in which Scott was performing his duties as porter when struck by the department head. The Captain corroborated the testimony of the appellee that the latter reported the occurrence before he left the ship.

Chief Cook Thessler denied that he ever struck Scott. He testified that the first day appellee came aboard he complained of bad feet and a sore back, which was giving him pain. Thessler said that Scott did not do all the work expected of him and was "helped out" by "the two other lads"; but he denied threatening, though he admitted he "might have reprimanded him in some way."

■ Obviously, the jury did not believe the Chief Cook's testimony. The issue of credibility between him and Scott was put squarely to the jury in the charge of the court, for the jurors were told that the issue up to them depended "almost entirely on the testimony of Scott and the testimony of Thessler," which were "direct opposites" and "strikingly contradictory"; that "Scott says the Chief Cook did hit him in the back, the Chief Cook says he did not hit him in the back"; and that the jurors would have to determine which of the two men they believed.

The trial judge, moreover, was explicit in his explanation to the jury of the applicable principles of law. The jurors were instructed that they should find for the plaintiff if they believed from a preponderance of the evidence that the Chief Cook struck him in the back and damaged him as plaintiff said and "the Chief Cook's act was within his general employment, that is, if the act was committed in connection with the performance of duties which he was authorized to perform in behalf of the Steamship Company."

The jurors were told that, to find for plaintiff, they must believe from a preponderance of the evidence that "the Chief Cook was acting for the Steamship Company when he struck the blow" and "was acting within the scope of his authority or as a part of his official duties, that it was not a personal controversy between the two men as individuals, separate and apart from all activity on the boat."

"If the Chief Cook and the porter had a personal quarrel," the charge continued, "and the Chief Cook struck the porter at a time when he was not acting as the agent for the Steamship Company, or the Steamship Company's employee, then for such action the Steamship Company could not be held liable."

■ There can be no just quarrel with the district court's instructions nor with their applicability to the facts in evidence. The case presented a sharp issue of fact for determination by the jury. Reversible error would have been committed had the trial judge directed a verdict for the defendant.

In Alpha Steamship Corporation v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086, a seaman employed as a fireman on an American steamship, navigating the high seas, was assaulted by his superior, an assistant engineer in charge of the engine room. A judgment against the shipowner on the verdict of a jury awarding the seaman damages for personal injuries caused by the assault was upheld by the Supreme Court under Section 33 of the Merchant Marine Act, where the evidence was sufficient to warrant a finding that the assistant engineer was authorized to direct the injured

seaman about his work and struck him for the purpose of reprimanding him for tardiness and compelling him to work. It is a fair inference from the evidence in the instant case that Chief Cook Thessler was stirred by a like motive in striking the appellee.

A case decided on the same day, Jamison v. Encarnacion, 281 U.S. 635, 638, 641, 50 S.Ct. 440, 441, 74 L.Ed. 1082, is likewise authority for affirmance of the judgment below. There, in an action for damages for personal injuries brought by a longshoreman against an employing stevedore, a judgment for the plaintiff on the verdict of a jury was affirmed. To quote from the opinion of the Supreme Court: "The evidence showed that the foreman was authorized by the employer to direct the crew and to keep them at work. Plaintiff's evidence was sufficient to warrant a finding that the foreman assaulted him without provocation, and to hurry him about the work. The trial judge instructed the jury that the defendant would not be liable if the foreman assaulted plaintiff by reason of a personal difference but that, if the foreman, in the course of his employment, committed an unprovoked assault upon plaintiff in furtherance of defendant's work, plaintiff might recover. * * * While the assault of which plaintiff complains was in excesss of the authority conferred by the employer upon the foreman, it was committed in the course of the discharge of his duties and in the furtherance of the work of the employer's business."

Upon the authority of the two Supreme Court cases just discussed, the Court of Appeals for the Second Circuit, in reversing a directed verdict, held that in an action under the Jones Act there was sufficient evidence for submission of the case to the jury where a drunken boatswain struck a seaman lying in his bunk half an hour before his time to go on watch. Judge Learned Hand said: "The inquiry into the tangled mazes of a drunken boatswain's mind may be beyond the powers of a jury, but it is the fact upon which the case turns, and there was enough to justify them in finding that he supposed that he was acting as boatswain and not wholly as a petty tyrant." Nelson v. American-West African

Line, 2 Cir., 86 F.2d 730, 732. The same court has declared that the obligation of a shipowner to his seamen is higher in the range of duty than that of an ordinary employer to his employees. Koehler v. Presque-Isle Transp. Co., 2 Cir., 141 F.2d 490, 492.

■ We think no helpful contribution to the subject matter would accrue from a discussion of the authorities cited by appellant from other circuits and a few state courts. We find all these cases distinguishable upon their facts; and, in our opinion, no one of them deviates from the principles which we are applying here. We recognize, as the cited authorities do, that a master is not liable for the negligent acts of his servant unless done in the course of and in furtherance of the master's business. See, for example, Brailas v. Shepard S. S. Co., 2 Cir., 152 F.2d 849.

■ A wilful assault perpetrated "to satisfy the temper or spite of the employee", not done in an attempt to further the employer's business, does not render the master liable for his servant's wanton acts. Lykes Bros. S. S. Co. v. Grubaugh, 5 Cir., 128 F.2d 387.

Appellant places emphasis upon Yukes v. Globe S. S. Corporation, 6 Cir., 107 F.2d 888, a decision of this court. In that case, a wheelsman on a lake steamer had gone ashore while the vessel was in port and had returned with a pint of whiskey, which he and other wheelsmen consumed in their quarters before supper. As he started to leave the ship's dining room, the wheelsman pushed a swinging steel-covered door against the third assistant engineer, who was on his way in. The resentment of the officer at being "bumped" led to an altercation, followed by fisticuffs and a scuffle in which the wheelsman was injured. In an action brought by the wheelsman against the steamship company under Section 33 of the Merchant Marine Act of 1920, a directed verdict for the defendant was sustained on appeal. This court said: "The difficulty with the appellant's case is that there is nothing to connect Cope's [referring to the third assistant engineer] assault upon him with discipline or the ship's business, or to bring it within the actual

or constructive scope of his authority. The altercation had its genesis not in any act of Cope, but in that of the appellant, and Cope's response was not an unnatural, even though a misguided reaction on the part of a man of bad temper, to the appellant's clumsiness. There was no order given or disobeyed; there was no violation of duty on the part of the seaman calling for discipline. The offense, if any, that started the trouble, was to Cope and not to the ship and Cope's reaction was personal and not on behalf of the ship."

In the present case, there is not the slightest evidence that the plaintiff porter had ever said or done anything personally offensive to his superior, who struck him. No grudge existed between the men. It appears from the record that the injured man made no comment or remark, either before or after the cook beat him. The chef's command, "Get them out, get them out, old man, before I kill you," followed almost immediately by heavy blows is clearly indicative of the fact that the man in charge of the kitchen took this brutal method of speeding up the work of the older man, who was under his authority and subject to his orders. In this aspect of the case, which was evidently that of the jury, there is clear-cut liability resting upon the shipowner to compensate the appellee for his personal injuries received at the hands of his superior.

The judgment is, therefore, affirmed.

Howard M. Long, of Philadelphia, Pa. (Nathan Griffith, of Philadelphia, Pa., on the brief), for appellant.

Abraham E. Freedman, of Philadelphia, Pa. (Charles Lakatos and Freedman, Landy & Lorry, all of Philadelphia, Pa., on the brief), amici curiae.

John Beck Shaw, of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., and Krusen, Evans and Shaw, all of Philadelphia, Pa., on the brief), for respondents.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and MURPHY, District Judge.