Elise **CIVIL**, as Administratrix of the goods, chattels and credits of Alphonse Syville, deceased, Libelant-Appellant, and Anne Syville, as General Guardian of Alphonse Syville, Jr., Marlene Syville, Agnes Syville, Mary Syville and Shawn Syville, Co-Libelant-Appellee,

v.

**WATERMAN STEAMSHIP CORPORATION, Respondent-Appellant.**

**No. 92, Docket 23147.**

United States Court of Appeals Second Circuit.

Argued Oct. 6, 8, 1954.

Decided Nov. 12, 1954.

L. Hand, Circuit Judge, dissented in part.

Edward B. Eliezer, New York City, for libelant-appellant.

Herman B. Gerringer, New York City (Jesse L. Rosenberg and Jacquin Frank, New York City, on the brief), for co-libelant-appellee.

Edward J. Behrens, New York City (Gay & Behrens, Charles H. Lawson, James A. Hageman, and Mack Kreindler, New York City, on the brief), for respondent-appellant.

Before CLARK, Chief Judge, and L. HAND and FRANK, Circuit Judges.

CLARK, Chief Judge.

Respondent, Waterman Steamship Corporation, appeals from an award under the Jones Act, 46 U.S.C. § 688, and the Death on the High Seas Act, 46 U.S.C. § 761, for the wrongful death of a seaman employed on one of respondent's ships. Alphonse Syville, second cook on the S. S. Kyska, was fatally stabbed on December 10, 1946, by Alfred H. Williams, the chief cook, after an altercation concerning the caliber of Syville's culinary abilities. Alphonse died soon thereafter and the present suit was commenced as a civil action under the Jones Act by Anne Syville, as his lawful widow, on the basis of letters of administration issued by the New York Surrogate's Court. Before the case could be heard, Anne's letters of administration were revoked at the instance of Elise Civil, a prior wife, who was substituted as administratrix. Thereupon notwithstanding objections by respondent, the action was transferred to the admiralty docket and still later Elise was brought in as libelant. After trial in the admiralty Judge Conger made awards of $5,000 for Elise and $14,671 for Anne as guardian of Syville's five children. On this appeal respondent attacks the procedural steps leading to the trial, the substantive theory upon which recovery was based, and the amount and apportionment of the damages. An appeal by Elise from a part of the division of the damages has now been withdrawn.

Respondent's first assignment of error is to the transfer of the case to admiralty and the addition of a second count under the Death on the High Seas Act. In seeking this amendment, Anne's counsel stated his belief that she had these two claims and did not wish to make election between them before trial and that he understood a claim was to be made that Anne was not the lawful wife and her children were not legitimate and not entitled to a recovery under the Jones Act. Respondent's opposing affidavit did so claim and objected to Anne's raising of the issue in such a "roundabout fashion" and requiring "the defendant to defend an admiralty suit under the Death on the High Seas Act without the service of process." Judge Leibell nevertheless granted the application, citing Batkiewicz v. Seas Shipping Co., D.C.S.D.N.Y., 53 F.Supp. 802, which holds that a claimant has just such an option, and The Four Sisters, D.C.Mass., 75 F.Supp. 399, which holds that recovery under one act, being for a different set of beneficiaries, does not bar recovery under the other. At the opening of the trial, respondent renewed its objections, claiming also that the court had no jurisdiction to proceed in admiralty for a death action under the Jones Act, that the original "election to proceed at law" could not be changed, and that the lawful widow was deprived of trial by jury. At this time Elise had an action pending under the Jones Act in the state court of New York, and her attorney joined in the objection—although now she expressly waives it or any claim for a jury trial. Judge Conger adhered to the earlier ruling made by Judge Leibell.

■■■ Quite obviously respondent cannot press a claim for jury trial for the benefit of the wife. The libelant under the Jones Act is the one who has the choice of forum and of jury trial, and no one else can change or remove the action elsewhere. Pate v. Standard Dredging Corp., 5 Cir., 193 F.2d 498, 500; 46 U.S.C. § 688, incorporating 45 U.S.C. § 56 and 28 U.S.C. § 1445(b); 1 Benedict on Admiralty 44, 45 (6th Ed.1940), 4 id. 199–201; Robinson on Admiralty 338–340 (1939); Willock, Commentary on Maritime Workers, 46 U.S.C.A. preceding § 688. Even if, contrary to the implication of The Four Sisters, supra, D.C.Mass., 75 F.Supp. 399, an election be required, there is nothing to force an early election upon the claimant, so at variance with the spirit of modern pleading and its liberality of amendment, Clark on Code Pleading 493, 498 (2d Ed.1947), with authorities there cited; and we have always allowed a quite free interchange between admiralty and law, indeed holding jury trial to be waived if not claimed before the interchange. See, e. g., United States ex rel. Pressprich & Son Co. v. James W. Elwell & Co., 2 Cir., 250 F. 939, certiorari denied 248 U.S. 564, 39 S.Ct. 8, 63 L.Ed. 423; James Richardson & Sons v. Conners Marine Co., 2 Cir., 141 F.2d 226, 230 note 2; United States v. The John R. Williams, 2 Cir., 144 F.2d 451, 454, certiorari denied Great Lakes Dredge & Dock Co. v. United States, 323 U.S. 782, 65 S.Ct. 271, 89 L.Ed. 625. Under F.R. 38(b) and (d), 28 U.S.C., the right of jury trial is personal to the litigant, who may waive it by his action or nonaction. Gulbenkian v. Gulbenkian, 2 Cir., 147 F.2d 173, 158 A.L.R. 990; Fidelity & Deposit Co. of Md. v. Krout, 2 Cir., 157 F.2d 912, 914; Alcoa S. S. Co. v. Ryan, 2 Cir., 211 F.2d 576, 578. And it is clear that recognition of any such claim as respondent makes would impinge on both this principle and the statutory options given the seaman or his representatives. Respondent vigorously asserts that it has "a fundamental right in litigation not to be placed in a position where it can only lose the lawsuit and cannot possibly prevail." The only meaning we can find in this is a protest that such an option to the widow to decline a procedural benefit when she sees she does not need it is unfair;

but of course such an option is not at all unusual in the law. Thus cf. Untersinger v. United States, 2 Cir., 172 F.2d 298, and 2 Moore's Federal Practice ¶ 12.12 (2d Ed.1948) on venue or jurisdiction over the person.

The other procedural error assigned is as to the order of Judge Coxe accepted by Judge Conger requiring Elise to prosecute this claim as libelant and giving Anne the status of co-libelant as general guardian for the protection of her children. Judge Coxe took this action because of the evident antagonism between Anne and Elise and to protect the rights of the infant children. Syville v. Waterman S. S. Corp., D.C. S.D.N.Y., 84 F.Supp. 718, 719. He justified the retention of Anne as a party under Local Admiralty Rule 18 of the Southern District, now Local Admiralty Rule 15, providing for the adding of parties upon a change of interest among the parties to the suit. And he supported his ruling also naming the children under Local Admiralty Rule 15, now Rule 12, providing for the joinder as co-libelants of persons entitled to participate in the recovery.

■ There is considerable doubt whether this action was correct, since only the personal representative, and not the beneficiary, has the right to sue under both the acts here in issue. See American R. Co. of Porto Rico v. Birch, 224 U.S. 547, 32 S.Ct. 603, 56 L.Ed. 879. But it is difficult to see how any error in this regard could have prejudiced respondent; indeed, under the ruling of The Four Sisters, supra, D.C. Mass., 75 F.Supp. 399, it seems a positive advantage to it to have all interests clearly represented and taken care of in this one action. In any event, no matter who prosecuted the libel, the administratrix was bound as fiduciary to represent all and to prosecute the claims of all possible beneficiaries as defined under the acts. In view of the similarity of statutory language (compare 46 U.S.C. § 761 with 45 U.S.C. § 59, incorporated by reference in 46 U.S.C. §

688), the right of illegitimate children to qualify as beneficiaries extends to the Jones Act as well as to the Death on the High Seas Act. Middleton v. Luckenbach S. S. Co., 2 Cir., 70 F.2d 326, certiorari denied Luckenbach S. S. Co. v. Middleton, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674.

■ We turn, therefore, to the substantive aspects of the case. The district court held the respondent liable for the knifing on the theory that the assailant Williams was acting as an agent within the scope of his authority. A shipowner is liable for acts of discipline carried out in the discharge of official duties and in the furtherance of the employer's business. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082; Alpha S. S. Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086; Nelson v. American-West African Line, 2 Cir., 86 F.2d 730, certiorari denied American-West African Line v. Nelson, 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873; Brailas v. Shepard S. S. Co., 2 Cir., 152 F.2d 849, certiorari denied 327 U.S. 807, 66 S.Ct. 970, 90 L.Ed. 1032; Pittsburgh S. S. Co. v. Scott, 6 Cir., 159 F.2d 373. There was ample evidence that this assault was disciplinary in nature. Williams himself testified that as Syville's superior officer he had complained only of Syville's culinary work and of his failure to attend a boat drill. He explicitly negated any personal animus between himself and Syville. Other crew members testified that shortly after the stabbing Williams said to the Chief Steward, Collins, "to get him to hell out of there and that would teach him a lesson and the rest to do what they are told." This testimony, admissible under the spontaneous exclamation or res gestae exception to the hearsay rule, American Mfg. Co. v. Bigelow, 2 Cir., 188 F. 34; 6 Wigmore on Evidence §§ 1745–50 (3d Ed. 1940), corroborated the disciplinary motive behind the assault. It was also reasonable to reject Williams' exculpatory claim of self-defense. Although Williams had alleged that Syville started

after him with a knife, other witnesses testified that they saw only Williams' knife with which Syville was stabbed. Their testimony was competent to contradict errors of fact of Williams, the witness in chief. Greenhall v. Carnegie Trust Co., D.C.S.D.N.Y., 180 F. 812; Coulter v. American Merchants' Union Express Co., 56 N.Y. 585; 3 Wigmore on Evidence § 907(3d Ed.1940).

■■■ The amount of damages allowed by the district court was not beyond its discretion. The exact quantum of pecuniary loss arising from a wrongful death is at best difficult to estimate. There was sufficient support for Judge Conger's findings of loss in the wages which Syville might reasonably have been expected to earn in a normal life span. Respondent's objection to the award of $1,500 for the deceased's pain and suffering seems to rest on a confusion between absence of physical sensation due to paralysis and absence of mental agony; its thesis that a person injured to the point of paralysis cannot suffer is surely too harsh for acceptance in the law.

■■■ Both the co-libelant, Anne, and the respondent urge that the allocation of any damages to the lawful widow, Elise, was improper, since Syville had long ago ceased to support her. The Jones Act and the Death on the High Seas Act explicitly name the widow as beneficiary without reference to her dependency on the deceased. 45 U.S.C. § 59, incorporated by reference in 46 U.S.C. § 688; 46 U.S.C. § 761. See Poff v. Pennsylvania R. Co., 327 U.S. 399, 400, 66 S.Ct. 603, 90 L.Ed. 749. It is clear that under state law Elise could at any time have forced Syville to contribute to her support, since they had been neither legally separated nor divorced. Kyff v. Kyff, 286 N.Y. 71, 35 N.E.2d 655. Hence Elise suffered a financial loss because of Syville's death for which she was entitled to substantial damages. New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167; Lawson v. United States, D.C.S.D.N.Y., 88 F.Supp. 706, 710, modi-

fied on other grounds, 2 Cir., 192 F.2d 479, certiorari denied 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323; Southern Ry. Co. v. Miller, 4 Cir., 267 F. 376, certiorari denied 254 U.S. 646, 41 S.Ct. 15, 65 L.Ed. 455. These appear to us to be fairly explicit affirmative rulings not explained away by any particular facts or circumstances. And there is literally no authority to the contrary; for these cases cannot be considered as limited by cases of non-widow claimants, where admittedly dependency must be shown. And the opposite result seems unusually harsh; a husband may be killed with impunity civilly if he has been faithless. Here libelant had actually attempted to pursue her husband for support; the failure of that attempt does not suggest that she would have failed to assert her natural and legitimate rights had she been able to locate him and found him with a paying job.

Affirmed.

L. HAND, Circuit Judge (dissenting in part).

I agree in all that my brothers say except that I cannot see any basis for an award to Elise, the widow. It is true that the Fourth Circuit in Southern Ry. Co. v. Miller, 267 F. 376, 381, held that a widow was entitled to "substantial damages, if the jury found in her favor," although she and the deceased "had separated soon after their marriage, and he had not thereafter contributed to her support"; but the decision that the court cited as authority for this, New Orleans & North Eastern Ry. Co. v. Harris, 247 U.S. 367, 372, 38 S.Ct. 535, 62 L.Ed. 1167, did not, with deference, hold anything of the kind. The wife of the deceased had indeed left him after living with him for only six months, and "thereafter her whereabouts were [sic] unknown to him"; but the court did not decide that the widow was entitled to any allowance. The question was whether the mother of the decedent was to get an allowance, there being a widow living, and the Supreme Court held no more than that she

was not, because it did not appear that the wife had been divorced. In saying that "no claim is made that rights and liabilities consequent upon marriage had disappeared under local law," the Court did not hold that those "rights" had any recoverable value, but only that unless they had disappeared the wife still remained a wife and, as such, her existence was a bar to any recovery by the mother. Nor does Lawson v. United States, D.C., 88 F.Supp. 706, 710, decide the point. The case came to the District Court on exceptions by the claimant to the report of a commissioner because he had made an inadequate award to the widow; and the court held no more than that "it cannot be said that the award of the Commissioner was unjustified and inadequate." No exceptions having been taken by the defendant, it was in no position to challenge the grant of the allowance in fact made.

From the outset it has been held that the damages recoverable under Lord Campbell's Act and its progeny are limited to such contributions as the beneficiary had "reasonable expectation" of receiving from the decedent. Thus, in Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 70, 33 S.Ct. 192, 196, 57 L.Ed. 417, the Court said: "The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived." Moreover, this the Court has several times repeated in the same, or substantially the same, words.[1] The Restatement of Torts[2] puts it in the following language: "In diminution is considered any fact tending to show that the de-

ceased would not have made the contributions normally expected from one in his position. Thus it is relevant that the deceased did not live at home, or that he had not supported his family, and probably would not have done so." My brothers do appear to suggest that the Jones Act and the Death on the High Seas Act should be construed differently from the Federal Employers' Liability Act, because no reference appears in them to the widow's dependency on the decedent. However, this is also true of the Federal Employers' Liability Act, which was the statute interpreted in the cases cited.

For the foregoing reasons I do not think that an award to the widow in the case at bar can rest upon the decedent's liability for her support; she was bound to show that she had some "reasonable expectation" of getting something from him, and how much it was. He had left her nearly 20 years before he was killed, had married another woman and begotten five children. She had had him arrested on a charge of bigamy about a year after he left her; but did not press it, apparently because she fell ill. That was in 1928; and, although she says that later she made several inquiries to learn where he was, and, indeed once met him, she did not start any civil proceeding to compel him to contribute to her support; perhaps because she could not find him. I can see no basis for thinking that, if he had lived, she would have had any better success. Nor does this seem to me an unjust result; the allowance now awarded will not compensate her for any pecuniary loss that she has suffered; it will be no more than a windfall that the murderous Williams has dropped into her lap.

1. American R. Co. of Porto Rico v. Didricksen, 227 U.S. 145, 149, 33 S.Ct. 224, 57 L.Ed. 456; Gulf, Colorado & S. F. Ry. Co. v. McGinnis, 228 U.S. 173, 176, 33 S.Ct. 426, 57 L.Ed. 785; Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 60 L.Ed. 1117; Mellon v. Goodyear, 277 U.S. 335, 341, 48 S.Ct. 541, 72 L.Ed. 906.

2. § 925, Comment b(1).