JOHN DUNGEY, Plaintiff-Appellee and Cross-Appellant, v. UNITED STATES STEEL CORPORATION, Defendant-Appellant and Cross-Appellee.

Fifth District No. 5—85—0377

Opinion filed September 30, 1986.—Rehearing denied November 7, 1986.

WELCH, J., dissenting.

Burroughs, Simpson, Hepler & Broom, of Edwardsville, for appellant.

Grey Chatham, of Cook, Shevlin, Keefe & Chatham, Ltd., of Belleville, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Plaintiff, John Dungey, brought suit against defendant, United States Steel Corporation, under the Merchant Marine Act of 1920 (46 U.S.C. sec. 688 (1982)) commonly known as the Jones Act, and under the general maritime law of the United States, in the circuit court of St. Clair County to recover damages for personal injuries received in the course of his employment. After a trial before the court sitting without a jury, judgment was entered in favor of plaintiff. Both parties appeal.

Plaintiff was a member of Operating Engineers Local No. 520; he was employed by defendant as an oiler on a crane, mounted on two barges, welded together, which served as a floating work platform situated in the Mississippi River at the site of the construction of the Jefferson Barracks Bridge across the river in south St. Clair County, Illinois, connecting the States of Missouri and Illinois. Plaintiff's only duties were in connection with the oiling and greasing of the crane which was used to set structural steel in the construction of the bridge.

The crane was designed to move in a 360-degree circle and was

referred to as a ringer crane. It was mounted on girders and beams welded to the deck of the barges. The platform on which the crane rested had no motive power, and when moved for any considerable distance, the use of a tugboat was required. Limited movement of the barge was possible by the use of winches which secured the anchor lines which positioned the barge in the river, and the movement of spuds that ran through the corners of the barge and were imbedded in the river bottom. Structural steel and supplies were transported to the platform by tugboat. Plaintiff had no duties associated with movement of the barge and was transported as a passenger morning and evening to and from the crane platform by tugboat. At noontime, the crew, consisting of the crane operator, some ironworkers, a mechanic and plaintiff remained on the platform and took their meals there. Plaintiff sometimes cooked for the men on facilities available in the heated work shed located on the deck.

On December 5, 1982, prior to plaintiff's accident, the platform broke loose from its moorings, struck the bridge, damaging the crane, and was propelled by the river current several miles downstream. The crane boom was severely damaged, and the barge was moved to shore by tugboat so that the crane could be repaired and rebuilt. Plaintiff was then assigned, along with members of other crafts, to a "bull gang" to repair the crane ashore.

After the crane was repaired, the barge platform was repositioned in the river and the boom was transported to the barge by tugboat. On December 30, 1982, the ironworker foreman assigned plaintiff the task of cleaning out the holes in the boom through which steel pins are inserted to connect the sections of the boom together and to the crane. Plaintiff used sandpaper, a brush and a grease gun to perform this task. While moving from one side of the boom to the other, plaintiff testified that he slipped on frost, fell from the girders which supported the ringer crane on the barge and onto the deck of the barge. A witness testified that grease and oil had accumulated on the girders and beams.

After a trial before the court, the court having denied defendant's jury demand because of late payment of the $50 jury fee required to be paid under section 27.1(5) of the act relating to clerks of courts (Ill. Rev. Stat. 1983, ch. 25, par. 27.1(5)), which was tendered after the cause was placed on the nonjury calendar, the court entered judgment for plaintiff for $650,000 and denied plaintiff's request for prejudgment interest, a ruling from which plaintiff has cross-appealed.

While numerous errors are relied upon by defendant for outright reversal or the award of a new trial, we conclude that the determina-

tion of plaintiff's status as a seaman is dispositive of this appeal; accordingly, we need not address the other errors relied on for reversal or the issue raised in plaintiff's cross-appeal.

■ In determining plaintiff's status as a seaman, we are, of course, governed by the Federal law developed in the cases decided under the Jones Act and the general maritime law. (*Alton & Southern Ry. Co. v. Alton Transportation Co.* (1980), 79 Ill. App. 3d 591, 399 N.E.2d 173.) The establishment of plaintiff's status as a seaman governs his right to sue both under the Jones Act and under the general maritime law for unseaworthiness.

The determination of seaman status has been the subject of extensive litigation and is further complicated by the divergence of opinion as to the proper test to be employed in answering this question, developed in the case law in the courts of the United States Courts of Appeal, where most maritime litigation occurs. Furthermore, the Supreme Court of the United States has last spoken to this subject in two *per curiam* opinions in 1958 (*Butler v. Whiteman* (1958), 356 U.S. 271, 2 L. Ed. 2d 754, 78 S. Ct. 734; *Grimes v. Raymond Concrete Pile Co.* (1958), 356 U.S. 252, 2 L. Ed. 2d 737, 78 S. Ct. 687), and the prior decisions of the Supreme Court, many *per curiam*, are not particularly helpful in resolving this question. These decisions are reviewed at length in *Offshore Co. v. Robison* (5th Cir. 1959), 266 F.2d 769, considered the seminal case in answering what has been referred to as the "riddle" of who is a Jones Act "seaman."

The Jones Act gives to seamen the right to sue their employers for injuries occasioned by negligence. The Act does not define who is a seaman. A seaman has been identified as one who is a "master or member of the crew of a vessel" as those terms are used in the Longshoremen's and Harbor Workers' Compensation Act (hereinafter LHWCA; 33 U.S.C. sec. 901 *et seq.* (1927)), as that Act only provides coverage to longshoremen and harbor workers and not to masters or members of the crew of a vessel. (*Swanson v. Marra Brothers Inc.* (1946), 328 U.S. 1, 90 L. Ed. 1045, 66 S. Ct. 869; *Senko v. LaCrosse Dredging Corp.* (1957), 352 U.S. 370, 1 L. Ed. 2d 404, 77 S. Ct. 415.) In other words, the LHWCA narrows the original scope of the Jones Act (see *International Stevedoring Co. v. Haverty* (1926), 272 U.S. 50, 71 L. Ed. 157, 47 S. Ct. 19) so that a seaman is one who is a member of the crew of a vessel, the terms being synonymous, and we may look to cases decided under the LHWCA to determine who is a seaman. (*Ardoin v. J. Ray McDermott & Co.* (5th Cir. 1981), 641 F.2d 277.) As noted in *Ardoin*, the phrase "member of the crew" is only slightly more illuminating than the word seaman.

In the early case *South Chicago Coal & Dock Co. v. Bassett* (1940), 309 U.S. 251, 84 L. Ed. 732, 60 S. Ct. 544, the Supreme Court addressed the question whether plaintiff, a laborer who drowned, was a "member of the crew" and, therefore, not covered under the LHWCA. Decedent worked as a deckhand aboard a lighter, directing the flow of coal from the lighter to the vessel being fueled. He threw lines but performed no navigational duties; he occasionally did some cleaning of the boat; he held no maritime articles and slept and boarded off the boat. The court decided that decedent's status as a "member of the crew" was a factual question to be determined in the first instance by the administrative procedure provided under the LHWCA. The finding of the deputy commissioner, if there was evidence to support, was conclusive and final. Quoting from an early case, the court said, " '[w]hen the "crew" of a vessel is referred to, those persons are naturally and primarily meant who are on board her *aiding in her navigation*, without reference to the nature of arrangement under which they are on board.' " (Emphasis added.) (309 U.S. 251, 259, 84 L. Ed. 732, 737, 60 S. Ct. 544, 548, quoting *The Bound Brook* (D.C. Mass. 1906), 146 F. 160, 164.) The court reasoned that while decedent might be classified as a "seaman," he was distinct from a member of a "crew" and was, therefore, excluded from coverage under the Jones Act. The court concluded that there was evidence to support the administrative finding awarding compensation under the LHWCA.

■ Following the decision of the Supreme Court in *South Chicago Coal & Dock Co. v. Bassett* (1940), 309 U.S. 251, 84 L. Ed. 732, 60 S. Ct. 544), the First Circuit decided *Carumbo v. Cape Code S.S. Co.* (1st Cir. 1941), 123 F.2d 991. Based on *South Chicago Coal & Dock Co.*, the court held that the test to be applied in determining seaman status under the Jones Act involved three factors: (1) that the vessel be in navigation; (2) that plaintiff have a more or less permanent connection with the vessel; and (3) that plaintiff be aboard primarily to aid in navigation. We are here concerned only with the third factor.

This test was employed by other circuits, although the application of the test to the navigational duties performed by the injured plaintiff were not always clear. (See, *e.g., Wilkes v. Mississippi River Sand & Gravel Co.* (6th Cir. 1953), 202 F.2d 383; *McKie v. Diamond Marine Co.* (5th Cir. 1953), 204 F.2d 132.) The same test has been adopted by this court in *Berry v. American Commercial Barge Lines* (1983), 114 Ill. App. 3d 354, 450 N.E.2d 436, where we reviewed a number of cases dealing with the status of the injured plaintiff as a

seaman.

The cases emphasize that only where the evidence is clear and admits of but one conclusion can the question of seaman status be decided as a matter of law as the Act is to be given a liberal construction. "Except in cases where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts, the riddle of seaman's status is one for the jury." *Ardoin v. J. Ray McDermott & Co.* (5th Cir. 1981), 641 F.2d 277, 280.

The case followed by the trial court in reaching its decision that plaintiff was a seaman and member of the crew of the work barge is *Offshore Co. v. Robison* (5th Cir. 1959), 266 F.2d 769, cited with approval in *Tullos v. Resource Drilling, Inc.* (5th Cir. 1985), 750 F.2d 380, also relied on as authority by the trial court. The plaintiff, Robison, was employed as a "roughneck" in the offshore petroleum industry in the Gulf of Mexico. He was injured while working as a driller's helper on a drilling rig mounted on a drilling platform resting on the bottom of the Gulf of Mexico on retractable legs. The rig was moved as a barge to its location by tugs. While moving as a barge, employees such as Robison would customarily chip rust, paint and handle lines. When injured, Robison was working with drilling casing. He sued under the Jones Act and the general maritime law.

The test for seaman status developed in *Robison,* and repeated in numerous Jones Act cases often involving injuries to workmen in the offshore petroleum industry, states that there is a submissible case for the trier of fact's consideration:

"(1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." (*Offshore Co. v. Robison* (5th Cir. 1959), 266 F.2d 769, 779.)

It will be observed that the *Robison* test for determining seaman status ignores the language "primarily in aid of navigation," the test advanced in *South Chicago Coal & Dock Co. v. Bassett*, which the Fifth Circuit had earlier adopted in *McKie v. Diamond Marine Co.* (5th Cir. 1953), 204 F.2d 132.

In *Robison*, recently reaffirmed in *Barrett v. Chevron, U.S.A., Inc.* (5th Cir. 1986), 781 F.2d 1067, the court discarded the "aid to navigation" test as largely meaningless. The court stated that, after examining numerous cases, "recovery is allowed when by no stretch of the imagination can it be said that the claimant had anything to do with navigation and is a member of the ship's company only in the sense that his duties have a connection with the mission or the function of the floatable structure where he was injured." (*Offshore Co. v. Robison* (5th Cir. 1959), 266 F.2d 769, 780.) The result of the adoption of the *Robison* test is that in almost any setting the determination of seaman status under the Jones Act is a factual question for the jury to decide. (See *Pickle v. International Oilfield Divers, Inc.* (5th Cir. 1986), 791 F.2d 1237 (involving an underwater diver welding a brace on a fixed diving platform).) *Robison* may be distinguished from the instant case in that Robison's duties aboard the drilling platform, capable of floating as a vessel, unlike Dungey's duties here, "contributed to her mission, to the operating function she was designed to perform as a sea-going drilling platform. Some of Robison's duties had a 'significant navigational function', like Senko's [*Senko v. La-Crosse Dredging Corp.* (1957), 352 U.S. 370, 1 L. Ed. 2d 404, 77 S. Ct. 415] in that they related to the seaworthiness, maintenance (welfare) of Offshore No. 55. Some of his duties *** are traditionally the duties of seamen in that they related to the movement of the vessel as a means of transport on water." *Offshore Co. v. Robison* (5th Cir. 1959), 266 F.2d 769, 779.

In *Senko v. LaCrosse Dredging Corp.* (1957), 352 U.S. 370, 1 L. Ed. 2d 404, 77 S. Ct. 415, cited in *Robison*, petitioner was a handyman employed on a dredge building a by-pass canal on the Mississippi River. He carried supplies and performed general maintenance on the floating dredge. He was injured ashore while in the work shed, where he had gone to store signal lanterns, when a coal stove in the shed exploded. The petitioner's chores included cleaning the deck of the dredge, splicing rope and stowing supplies, taking soundings and cleaning navigational lights when the dredge was in transit. The court concluded that the jury could find that petitioner was responsible for the seaworthiness of the dredge and was employed on the dredge as a member of the crew. The fact that he was injured on land was not material. He had "a significant navigational function when the dredge was put in transit." 352 U.S. 370, 374, 1 L. Ed. 2d 404, 408, 77 S. Ct. 415, 418.

The Fifth Circuit's test of seaman status would appear to be an outgrowth of the Supreme Court's *per curiam* reversal of an earlier

case where it was determined as a question of law on almost identical facts that a member of a drilling crew on an offshore oil rig was not a seaman. *Gianfala v. Texas Co.* (1955), 350 U.S. 879, 100 L. Ed. 775, 76 S. Ct. 141, *rev'g* (5th Cir. 1955), 222 F.2d 382.

The four cases cited by the Supreme Court in its *per curiam* reversal shed little light on the question of the proper test to determine status as a seaman and are noted as follows: *South Chicago Coal & Dock Co. v. Bassett* (1940), 309 U.S. 251, 84 L. Ed. 732, 60 S. Ct. 544, held only that the deputy commissioner's administrative determination that a deckhand aboard a lighter, assisting in the flow of coal to the vessel being fueled, was not a member of the crew and accordingly was entitled to compensation under the LHWCA was supported by the evidence; *Summerlin v. Massman Construction Co.* (4th Cir. 1952), 199 F.2d 715, held without analysis or detailed discussion of the facts that a jury question is presented as to the seaman status of a worker employed as a fireman on a floating derrick used in the construction of a bridge on the York River in Virginia; *Wilkes v. Mississippi Sand & Gravel Co.* (6th Cir. 1953), 202 F.2d 383, held that it was a jury question whether laborers employed and living aboard a gravel dredge in the Mississippi River aided in the navigation of the vessel and were therefore seamen when they contributed to the operation and welfare of the vessel; and *Gahagan Construction Corp. v. Armao* (1st Cir. 1948), 165 F.2d 301, held that a jury could find that an employee on a dredge in Boston Harbor was a seaman, a seaman being one who does any work aboard a ship in navigation, and also a member of the crew as he performed chores in aid of navigation of the vessel.

Professors Gilmore and Black observe:

"Who else might be excluded (or included) was, as a matter of initial construction, impossible to say. After a half-century of litigation the answer to the riddle is not apparent. The Supreme Court has alternated between giving the term 'seaman' an exceedingly broad construction and giving it a much narrower one. Consequently defendants have been encouraged to argue, in all but the most obvious cases, that plaintiff is not a Jones Act seaman and that the action must be dismissed. Thus there has always been, there continues to be, and presumably there will go on being a substantial volume of depressing litigation of this type." G. Gilmore & C. Black, The Law of Admiralty secs. 6–21, at 328 (2d ed. 1975).

Even in the Fifth Circuit, however, where most of the litigation involving seaman status has occurred, there has been considerable

inconsistency in the cases. (*Cf. Barrios v. Louisiana Construction Material Co.* (5th Cir. 1972), 465 F.2d 1157, with *Cook v. Belden Concrete Products, Inc.* (5th Cir. 1973), 472 F.2d 999.) Professors Gilmore and Black, in their excellent treatise on admiralty law, conclude that "[e]ven in a Circuit as steeped in admiralty law as the Fifth, the plaintiff's fate, in cases of this court, seems to depend on the luck of the judicial draw." G. Gilmore & C. Black, The Law of Admiralty, sec. 6—20, at 334 (2d ed. 1975).

Recently, the Seventh Circuit decided *Johnson v. John F. Beasley Construction Co.* (7th Cir. 1984), 742 F.2d 1054, *cert. denied* (1985), 469 U.S. 1211, 84 L. Ed. 2d 328, 105 S. Ct. 1180. On operative facts indistinguishable from those present here, the court decided that Johnson, an ironworker, was not a seaman. Johnson was employed by defendant, a structural steel contractor, to work in the removal of a "swing" span of a railroad bridge over the Illinois River and replace it with a "lift" span. Plaintiff was a foreman in charge of the crew performing the work. Plaintiff was transported daily by tug to a barge used as a work platform in the river channel which supported a large crane used in the construction project in the removal and erection of structural steel. The barge had no motive power, but, unlike the barge employed here, it was moved by tug downstream where construction material would be loaded aboard it from supply trucks on shore by the use of the crane and thus clearly was a "vessel in navigation." On such occasions, plaintiff would assist in the loading and would handle lines.

While plaintiff was supervising the construction of a control house on the bridge, the tugboat collided with a beam on the barge which turned and came in contact with Johnson's leg, causing a severe injury requiring the amputation of the leg. As here, plaintiff received Illinois workers' compensation benefits and subsequently brought suit in the district court to recover under the Jones Act.

In reviewing the development of the law under the Jones Act, the court first noted that the case law had not developed a uniform or consistent interpretation of the term "seaman." The court stated that while it found the opinion in *Robison*

"a well-reasoned attempt to extract relevant principles from then-existing case law, *** we think that its restatement of the third prong of the traditional test (that the employee's duties must be primarily in aid of navigation), *** is too broad in that it accords insufficient weight to the relationship between the employee and the *transportation* function of the vessel. More specifically, we think the second part of the *Robi-*

*son* test strays from important Jones Act principles when it speaks of the employee's duties as having to relate only to the 'function of the vessel or the accomplishment of its mission' without further qualifying 'function' and 'mission' in terms of the *** vessel." (Emphasis in original.) *Johnson v. John F. Beasley Construction Co.* (7th Cir. 1984), 742 F.2d 1054, 1061.

The court attributed the *Robison* court's failure to consider the employee's duties in relation to the transportation function of the vessel to the court's attempt to determine the reasoning of the Supreme Court in several earlier *per curiam* opinions. *Johnson* interpreted *Senko* as holding that the employee must have significant navigational functions before he can be considered a Jones Act seaman and a member of the crew of a vessel. Because a vessel must function in the transportation of personnel or materials across navigable waters (*Powers v. Bethlehem Steel Corp.* (1st Cir. 1973), 477 F.2d 643, 647), the employee's duties must relate to the transportation function of the vessel.

The *Johnson* court reasoned that the interpretation of "seaman" in *Robison* was intended to give reasonable protection to workers in the offshore oil industry, but "[w]hile such categories of workers previously may have fallen through the cracks of existing compensation schemes, they are now protected through the Outer Continental Shelf Lands Act, 43 U.S.C. sec. 1333(b), which incorporates the coverage of the LHWCA." *Johnson v. John F. Beasley Construction Co.* (7th Cir. 1984), 742 F.2d 1054, 1062.

Notwithstanding that it may be appropriate to find seaman status when the employee's duties fall into what the court characterized as "gray areas," the court stated that it distorts the purpose of the Jones Act "when persons who are obviously not seamen recover damages at the ship owner's expense. If the Jones Act is to retain any limitations on its coverage, we believe the employee's duties with respect to the transportation function of the vessel should define them." 742 F.2d 1054, 1062.

The court concluded that there is an evidentiary basis for submitting to the jury the question of the injured party's status as a seaman if:

"(1) the person injured had a more or less permanent connection with a vessel in navigation, and (2) the person injured made a significant contribution to the maintenance, operation, or welfare of the transportation function of the vessel." 742 F.2d 1054, 1063.

In applying this test to the facts of the case, the court held that

there was no evidentiary basis for submitting the case to the jury because the only evidence suggesting that plaintiff was a seaman or member of the crew was the statement that he may have handled mooring lines—this the court found to be insignificant with respect to the transportation function of the barge.

In the case before us, in ruling on defendant's motion for directed verdict, the trial court acknowledged that, if it were to follow *Johnson,* no evidence suggested that Dungey had anything to do with the transportation function of the work barge or the tug that transported the workmen and moved the barge in position in the river and that defendant would be entitled to a directed verdict. The court made it clear, however, that it was following *Robison* and the test adopted in the Fifth Circuit and that a fact question was presented as to plaintiff's status as a seaman because there was evidence that his duties contributed to the function of the vessel or to the accomplishment of its mission as a work barge or floating work platform.

In *Barrett v. Chevron, U.S.A., Inc.* (5th Cir. 1986), 781 F.2d 1067, the court reconsidered, *en banc,* the test for seaman status developed 26 years earlier in *Robison.* Barrett was injured while working as a member of a welding crew in repairing the caisson of a producing offshore oil well. Because of the small size of the platform, the work was largely performed from a barge positioned alongside the caisson where plaintiff spent most of his time in fabricating new pipe sections to be welded onto the caisson. The workers were transported daily to the worksite by crew boat from living quarters provided on a fixed platform. Barrett injured his back while being transported from the crew boat to the work barge in a personnel basket by the use of a crane on the barge. He continued to work, however, and claimed his injury was aggravated the following day while lifting a heavy piece of pipe on the work barge. Plaintiff sought damages under the Jones Act and general maritime law for negligence and unseaworthiness.

In *Barrett* the court once again reviewed the development of the law, often expressed as the "riddle" of seaman status, observing that the last attention given this question by the Supreme Court was in two brief *per curiam* opinions in 1958 (*Butler v. Whiteman* (1958), 356 U.S. 271, 2 L. Ed. 2d 754, 78 S. Ct. 734; *Grimes v. Raymond Concrete Pile Co.* (1958), 356 U.S. 252, 2 L. Ed. 2d 737, 78 S. Ct. 687). The court affirmed its adherence to the test formulated in *Robison,* rejecting the test advanced by the Seventh Circuit in *Johnson,* observing that *Robison* had stood the test of time, had been

cited more than 95 times, and was considered the leading case on the subject. In applying another part of the *Robison* test, however, the court found the evidence insufficient to support a finding that Barrett was a member of the crew of the work barge. In the context of his entire employment, he performed 70% to 80% of his work on fixed platforms, not barges, hence was not a member of the crew of a vessel or fleet of vessels.

In a special concurrence, four judges opted to adopt the rule of *Johnson v. John F. Beasley Construction Co.*, approving of the reasoning of the Seventh Circuit as expressed in its opinion and stating, "[a] bright-line rule is called for, one that nudges coverage back toward the blue-water sailors for whom the Jones Act was meant." *Barrett v. Chevron, U.S.A., Inc.* (5th Cir. 1976), 781 F.2d 1067, 1076 (Gee, J., specially concurring).

■ We assume for the purpose of this disposition that a fact question is here presented by the evidence as to Dungey's status as a seaman and member of the crew of the work barge on which he was injured should we adopt the *Robison* test. We choose, however, to adopt the test promulgated by the Seventh Circuit in *Johnson* as more logical and reasonable and one capable of rational and consistent application. It simply seems illogical that an essentially land-based worker, an oiler, a member of the operating engineers union, whose only duties were the oiling of the crane situated on the barge and subsequent repair of the boom of the crane after it was damaged, could be considered a seaman and member of the crew of a vessel. He performed no work in connection with the transportation function of the barge, which we here assume to be a vessel in navigation.

We are further persuaded to adopt the *Johnson* test for seaman status for another reason. The United States district courts sitting in Illinois would be obliged to follow *Johnson*, there being no contrary holding of the United States Supreme Court which would be binding on all inferior Federal courts. (*Powell v. United States* (7th Cir. 1964), 338 F.2d 556; *Shakman v. Democratic Organization of Cook County* (N.D. Ill. 1972), 356 F. Supp. 1241, 1246.) It would be anomalous that different rules for determining seaman status would turn on whether a cause was filed in the Federal district courts in Illinois or in the Illinois circuit courts, there being concurrent jurisdiction in actions arising under the Jones Act. *Engel v. Davenport* (1926), 271 U.S. 33, 70 L. Ed. 813, 46 S. Ct. 410; 46 U.S.C. sec. 688 (1982); 45 U.S.C. secs. 51, 56 (1982).

We choose to adopt the reasoning of *Johnson v. John F. Beasley*

*Construction Co.* (7th Cir. 1984), 742 F.2d 1054. Accordingly, the judgment of the Circuit Court of St. Clair County is reversed.

Reversed.

KASSERMAN, P.J., concurs.

JUSTICE WELCH, dissenting:

I approve of the reasoning of the majority with the single exception that I do not find *Johnson v. John F. Beasley Construction Co.* (7th Cir. 1984), 742 F.2d 1054, requires the conclusion plaintiff was not a "seaman."

In *Johnson,* the plaintiff's employer was building the new lift section and control house of a railroad bridge over the Illinois River. The plaintiff was the foreman of the crew constructing the lift section and control house over water from a barge. The barge had no motive power of its own and no steering, and was pushed to its position by a tugboat. Plaintiff and his crew assisted with holding and preparing lines to shore.

In *Johnson,* the plaintiff was hardly more than a passenger on the barge. He did almost nothing for the barge itself. His crew used it as a platform from which to construct a bridge. In the case at bar, plaintiff's duties concerned the operation of the crane which was affixed to and part of the vessel on which he was stationed. He was on the vessel not because it was a convenient place to stand, but because the functions of the vessel required that someone of his qualifications be there to ensure that the vessel continued to serve its functions.

I believe that this plaintiff does come within the "transportation function" test in *Johnson.* The instant vessel was two barges welded together with a mounted crane. The plaintiff's job was repair, reassembly and maintenance of the crane portion of the vessel. If plaintiff's work were not done, there would be no reason for the vessel to go anywhere as the unit would be inoperative and of no use. Plaintiff's duties made him an essential member of the crew of the vessel, and he was entitled to the same protection as any seaman.

I conclude plaintiff in the case at bar "made a significant contribution to the maintenance, operation, or welfare of the transportation function of the vessel" (*Johnson v. John F. Beasley Construction Co.* (7th Cir. 1984), 742 F.2d 1054, 1063), and I therefore dissent.