**David NETTO, Plaintiff–Appellant,**

v.

**AMTRAK (National Railroad Passenger Corporation), Defendant–Appellee.**

No. 87–3898.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1989.

---

Robert L. Hackett, Oestreicher, Whalen & Hackett, New Orleans, La., for plaintiff-appellant.

Ellis B. Murov, Deutsch, Kerrigan & Stiles, New Orleans, La., Robert A. McCullough, Asst. Gen. Counsel, Nat.R.R. Passenger Corp., Washington, D.C., for defendant-appellee.

Before THORNBERRY, KING, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff David Netto appeals a summary judgment rendered against him and seeks to compel further discovery. Netto brought his initial action alleging violations by his employer of the Federal Employers' Liability Act. Finding the district court's judgment to be correct, we affirm.

## BACKGROUND

Defendant National Railroad Passenger Corp. ("Amtrak") employed Netto as a railroad policeman for approximately five and a half years. Before he was employed by Amtrak, Netto had been an officer with the New Orleans Police Department. During his employment at Amtrak, Netto investigated an incident that involved the alleged rape of a woman by an unknown assailant in the Amtrak coach yard. Amtrak received Netto's report about the incident around January 30, 1981. Several years later, in the spring of 1986, Amtrak began both an internal and a criminal investigation into alleged improprieties in the operations of the New Orleans Amtrak Police Department. In the course of this investigation, Netto was questioned about the reports he had filed concerning the 1981 rape incident, and he was also asked to submit to a polygraph exam. On the day of the polygraph, Netto checked into the psychiatric unit of a hospital where he was treated for a "mental and nervous condition." Netto remained in the hospital for one month and was discharged as fit to return to work. Amtrak fired Netto from his job in August 1986. Netto appealed in an arbitration proceeding, but his discharge from Amtrak was upheld.

Netto then filed this suit in September of 1986, claiming that he was the victim of "ruthless harassment" by Amtrak employees during an "unfounded witchhunt." Netto alleged that he suffered a nervous breakdown as a result of this harassment, and he sought $830,000 pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"). In December 1987, the district court granted Amtrak's motion for summary judgment. The court granted summary judgment because it found that: (1) Netto's injuries were purely emotional; (2) recovery under FELA for purely emotional injuries requires a showing of unconscionable abuse or outrageous conduct; and (3) the undisputed material facts show neither unconscionable abuse nor outrageous conduct. In this appeal, Netto challenges the district court's grant of summary judgment, and also argues that

he should be allowed to continue the discovery process.

## DISCUSSION

### I. *Standard of review*

In reviewing the district court's grant of summary judgment, the standard of review at the appellate level remains the same as at the trial court level. *Ayo v. Johns–Manville Sales Corp.,* 771 F.2d 902, 904 (5th Cir.1985). The pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id. See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265, 273–75 (1986), *cert. denied,* — U.S. ——, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988); Fed.R.Civ.P. 56(c). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The appellate court decides questions of law, however, just as it decides questions of law outside the summary judgment context: *de novo. Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Insurance Co.,* 832 F.2d 1358, 1364 (5th Cir.1987).

### II. *FELA claim for emotional injuries*

Netto argues that the district court erred in holding he had no cause of action for emotional and mental injuries. Netto contends that these injuries were caused by Amtrak's "deliberate harassment and/or negligent treatment" of him during the rape investigation. This harassment, in turn, allegedly led to Netto's month-long hospitalization.

In support of these claims, Netto relies on the Supreme Court's ruling in *Atchison, Topeka & Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). In *Buell,* the Supreme Court, identifying as the purpose of the FELA the creation of a federal remedy for railroad

workers injured through the negligence of their employer or their fellow employees,[1] 107 S.Ct. at 1413, refused to carve out a narrow exception for purely emotional injuries. The Court, however, left open the question whether purely emotional injuries are cognizable under the FELA. *Id.* at 1416–17. Arguably, the Court limited such claims to situations in which the plaintiff has suffered severe emotional injury as a result of unconscionable abuse. *Id.* at 1416 n. 13, 1417–18. In commenting upon the argument that allowing FELA actions to complement arbitration under the Railway Labor Act would open the floodgates of litigation, the Court stated: "This parade of horribles mistakenly assumes that a significant percentage of employees bringing grievances suffer the type of severe emotional injury that has generally been required to establish liability for purely emotional injury ... and that a significant percentage of employees are subject to the type of unconscionable abuse which is a prerequisite to recovery." *Id.* at 1416 n. 13.

Later in its opinion, however, the Court reflects upon the variation among state tort laws[2] recognizing claims for intentional or negligent infliction of emotional distress and states that

> whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity ... In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive "yes" or "no" answer. *Id.* at 1417–18.

The Court, in sum, appears to invite the lower courts to parse the FELA in light of the specific facts of later cases. As the First Circuit has commented about *Buell:* "We discern from the *Buell* opinion an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open." *Moody v. Maine Central Railroad Co.,* 823 F.2d 693, 694 (1st Cir.1987).

Three circuits have addressed the cognizability of FELA emotional injury claims in the wake of *Buell.* In *Moody, supra,* a plaintiff railroad employee claimed that his employer negligently injured him through long-continued harassment by denying him admission to its engineer training program, assigning him to unattractive locations, denying his qualification for certain runs, and suggesting in a letter by his superior that in the future no employees like the plaintiff be selected for training and advancement. *Id.* at 693. The First Circuit affirmed a summary judgment for the railroad, but in so doing it resisted the opportunity to "explor[e] the frontier possibly opened by *Buell.*" *Id.* at 694. Instead, the court affirmed because plaintiff failed to make a sufficient showing that severe emotional injury was caused by the railroad. *See Celotex Corp. v. Catrett,* 477 U.S. at 322–24, 106 S.Ct. at 2552–54, 91 L.Ed.2d at 273–75 (summary judgment mandated, after adequate time for discovery, against party failing to make showing sufficient to establish essential element of case on which party bears burden of proof).

The Sixth Circuit, by contrast, has explored the frontier opened by *Buell* and found no home there for a claim of intentional infliction of emotional distress under FELA. In *Adkins v. Seaboard System Railroad,* 821 F.2d 340 (6th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 452, 98 L.Ed. 2d 392 (1987), a former railroad employee sued his former employer for emotional distress allegedly caused by a threatened discharge for insubordination. *Id.* at 340–41. The Sixth Circuit read *Buell* to refer

---

**1.** Section 1 of the FELA provides, in part:

Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, tract, roadbed, works, boats, wharves, or other equipment. 45 U.S.C. § 51.

**2.** FELA has borrowed doctrinally from the common law. *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949).

only to negligent conduct as giving rise to an FELA claim. *Id.* at 341 (citing *Buell,* 107 S.Ct. at 1413, 1415). According to that court, although *Buell* notes that the FELA has been held to apply to some intentional torts, 107 S.Ct. at 1414 n. 8, the FELA has not been applied to intentional torts that lack any physical dimension, such as assault. *Id.* at 341 (citing *Antalek v. Norfolk & Western Railway Co.,* 742 F.2d 1454 (6th Cir.1984); *Lancaster v. Norfolk & Western Railway Co.,* 773 F.2d 807, 813 (7th Cir. 1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987)). Because the plaintiff's claim was "clearly one for intentional infliction of emotional distress," it failed for FELA purposes.

The Seventh Circuit has held that no FELA claim was stated by a plaintiff's allegations that the railroad:

> unfairly criticized the plaintiff's work, prosecuting unwarranted disciplinary charges against him, setting unrealistic work quotas and 'wearing him out physically and mentally thereby,' harassing him by 'keeping an extraordinarily close watch on [his] work and following him from work assignment to work assignment,' conducting disciplinary proceedings against him unfairly ... and, ... deliberately inflicting emotional distress on him.

*Hammond v. Terminal R.R. Ass'n of St. Louis,* 848 F.2d 95 (7th Cir.1988). In reaching this conclusion, the court followed its own precedent. *Lancaster v. Norfolk & Western Ry.,* 773 F.2d 807 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987) (FELA is limited to tortious conduct involving unwanted physical contact or threats of such conduct).[3]

▇▇▇ We opt for the course chosen by the First Circuit. We do not decide whether a plaintiff may recover for purely emotional injuries under the FELA because even if we were to allow such claims, Netto's failure to adduce any evidence to establish an essential element of his claim—unconscionable or outrageous conduct by Amtrak—would preclude recovery.[4] The Supreme Court has held that a party who seeks to defeat a summary judgment motion must file such affidavits or other evidence permitted under Fed.R.Civ. P. 56(c) as will raise a genuine issue of material fact on each element of the party's cause of action. If the party does not carry this burden, then judgment will be entered against the non-movant. *Celotex Corp., supra.* In the present case, although Netto has had ample time for discovery, he has been unable to "make a showing sufficient to establish the existence of an element essential to [his] case." 477 U.S. at

---

**3.** Before *Buell,* the circuit courts were, to say the least, wary of FELA claims based on emotional injuries. *See Beanland v. Chicago, Rock Island & Pacific Railroad Co.,* 480 F.2d 109, 113–14 (8th Cir.1973) (damages related to discharge from employment are not recoverable, nor is evidence of such admissible, under FELA); *Lancaster, supra; McSorley v. Consolidated Rail Corp.,* 581 F.Supp. 642 (S.D.N.Y. 1984) (false arrest and malicious prosecution claims not maintainable under FELA as they produce no physical injuries). These cases would suggest that emotional injuries that are neither related to nor caused by physical trauma are not compensable under the FELA.

**4.** Netto's complaint alleged negligence as well as outrageous conduct and further alleged that Netto had some physical symptoms of his emotional distress. Thus, Netto might have been trying to make out a claim modelled on the common law theory of *negligent* infliction of emotional distress, *Buell,* 107 S.Ct. at 1417–18 and nn. 16–21; *Prosser and Keeton on Torts* 359–64 (discussing distinction between causes

for intentional and negligent infliction of emotional distress at common law). Netto failed, however, to dispute the district court's characterization of his claim as one for purely emotional harm, which the district court held would justify FELA relief only if it is caused by outrageous conduct. He never advanced his alternative negligence theory before the district court, or on appeal. We therefore find that he has abandoned any such claim. *See United States v. Ballard,* 779 F.2d 287, 295 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986) (party abandoned claim on appeal by failing to brief issues adequately); *see also* 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure,* § 3974 at 421 n. 1 (1985 and Supp. 1988) (waiver of arguments inadequately briefed). We address only the question properly presented for appeal—whether summary judgment was proper as to Netto's assertion of a right to recover under the FELA for purely emotional injuries, based on outrageous conduct. We do not, as we state above, pass on whether a recovery may be had under FELA for purely emotional injuries.

322, 106 S.Ct. at 2552. Given this lack of threshold factual support, the district court's summary judgment must be affirmed.

First, Netto did not impute outrageous or unconscionable conduct to Amtrak. Netto showed nothing to suggest that Amtrak's conduct was outrageous or unconscionable. Amtrak and its police department have a duty to investigate crimes occurring on Amtrak property. Netto, in his position as an Amtrak policeman, was required to investigate such crimes. In 1986, Netto's superior received information that a woman had been raped on Amtrak property and either no investigation was made or the facts had been covered up in violation of the Amtrak Code of Conduct. Amtrak's questioning of Netto, the officer who investigated this incident, was therefore obviously appropriate.

As to the interviews themselves, the facts presented demonstrate that Amtrak's investigative process was far from outrageous. It appears that Netto was interviewed in a familiar environment during his regular work shift. The interviews were spaced over reasonable time periods. Netto always had the opportunity to have a representative present with him during the interviews. These facts and the transcripts of the interviews indicate that Amtrak's actions never approached outrageousness or unconscionable abuse. Compare *Buell*, 107 S.Ct. at 1416 n. 13, 1417–18.

Amtrak argues that Netto similarly failed to adduce evidence to establish that his one-month hospitalization resulted from any conduct on Amtrak's part. Because we hold that Netto failed, under *Celotex*, to make a sufficient showing of outrageous conduct by Amtrak—an element essential to recovery for purely emotional injuries—we need not reach the causation issue.

III. *Outstanding discovery*

The district court properly dismissed Netto's complaint despite the exist-

ence of outstanding discovery requests. Netto filed his complaint on September 11, 1986; Amtrak filed a Motion for Summary and/or Partial Summary Judgment on November 17, 1987. Considerable discovery was undertaken. Netto opposed the summary judgment motion, alleging that dismissal was inappropriate because some discovery was still outstanding. He never moved for a continuance or submitted an affidavit showing how the outstanding discovery could assist him in opposing the motion for summary judgment. See Fed.R. Civ.P. 56(f). Similarly, on appeal, Netto presents no explanation about the way in which the outstanding discovery could have aided his cause of action. His allegations on this matter lack specificity: "Mr. Netto has attempted to discover pertinent information regarding an alleged rape which he has been accused of 'covering up.' This necessary information would exonerate him, and prove the unprofessional policy of Amtrak's investigation." Appellant's Brief at 17.

The outstanding discovery involved interrogatories yet unanswered by Amtrak and requests for New Orleans Police Department files. From this discovery, Netto contends that he was "attempting to elicit vital information from the defendant and the N.O.P.D. [New Orleans Police Department]," in order to "show that Amtrak's investigation of him was only a small part of a large scale witchhunt and that Amtrak's investigation of him was meritless." Appellant's Brief at 8.

By their very nature, however, the outstanding discovery requests could not have controverted Amtrak's evidence that it dealt reasonably with Netto. The discovery requests do not seek documents or information relating to the conduct of Amtrak toward Netto. Rather, they emphasize contacts between Amtrak personnel and others in connection with allegations that did not involve Netto.[5] Netto fails to

5. The lack of probative value of such discovery is supported by another fact. Amtrak was investigating allegations of widespread misconduct in its New Orleans Security office at the time of and including Netto's interviews. Al-

though Netto deposed Amtrak investigator Ron Frazier, he did not delve into allegations of misconduct by anyone other than Netto's superior, Captain Shephard. Surely, if he had thought that the witchhunt theory shed light on Am-

convince us that the outstanding discovery would have aided his case or even been relevant to the suit.

■ As this Court has previously stated, a plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion. *Paul Kadair, Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1029–30 (5th Cir.1983). A district judge "may exercise his discretion to prevent the plaintiff from burdening the defendants with a needless round of discovery." *Id.* at 1030. The court pointed out: "[I]t is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover." 694 F.2d at 1030 (quoting *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981).) *See also Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1193–94 (5th Cir.1986).

These statements accurately describe the posture of Netto's suit against Amtrak. Netto's complaint is based on conclusory allegations which lack evidence to support them. The parties' briefs and the record indicate a lack of direct, circumstantial, or inferential evidence creating a genuine issue of fact on an element necessary to his claim. Further, Netto does not indicate how the requested discovery would be more than a "fishing expedition." The district court thus properly granted summary judgment despite the existence of outstanding discovery.

The judgment of the district court is AFFIRMED.

trak's treatment of him, it would have been logical to pursue it through an Amtrak investi-