RONALD WILSON, Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 5—97—0798

Opinion filed June 10, 1998.

Thompson Coburn, of Belleville, for appellant.

Eric D. Jackstadt, of Granite City, for appellee.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff, Ronald Wilson, filed a complaint pursuant to the Federal Employer's Liability Act (the Act) (45 U.S.C.A. § 51 *et seq.* (West 1986)), seeking to recover damages from defendant, Norfolk and Western Railway Company. Plaintiff alleged that defendant intentionally inflicted emotional distress upon him during the course of his employment with defendant. Defendant moved for summary judgment on plaintiff's complaint, claiming that since plaintiff had not suffered a physical contact or the threat of a physical contact as a result of its alleged actions, it was not liable to the plaintiff. The circuit court denied defendant's motion for summary judgment. Upon defendant filing a motion to reconsider or, in the alternative, a motion for certification under Supreme Court Rule 308 (155 Ill. 2d R. 308), the circuit court denied the motion to reconsider but did, however, certify for interlocutory appeal, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), the following question: "Whether plaintiff must plead and offer proof of physical contact or the threat of physical contact before a plaintiff can recover for the intentional infliction of emotional distress under the [Act]."

Initially, we note that the aforementioned question is really twofold: (1) Is a claim for intentional infliction of emotional distress recognized under the Act? (2) If so, must the plaintiff plead and prove physical contact or the threat of physical contact before he can recover for intentional infliction of emotional distress under the Act?

Since there is disagreement among the federal courts on the answers to the aforementioned questions (see *Ray v. Consolidated R. Corp.*, 938 F.2d 704, 705 (7th Cir. 1991); *Adams v. CSX Transportation, Inc.*, 899 F.2d 536 (6th Cir. 1990); *Netto v. Amtrak*, 863 F.2d 1210 (5th Cir. 1989); *Hammond v. Terminal R.R. Ass'n*, 848 F.2d 95, 96-97 (7th Cir. 1988); *Moody v. Maine Central R.R. Co.*, 823 F.2d 693 (1st Cir. 1987); *Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807 (7th Cir. 1985); *Kraus v. Consolidated R. Corp.*, 723 F. Supp. 1073

(E.D. Pa. 1989), *aff'd*, 947 F.2d 935 (3d Cir. 1991) (unpublished decision); *Teague v. National R.R. Passenger Corp.*, 708 F. Supp. 1344 (D. Mass. 1989)), we must determine which federal court's reasoning this court will adopt.

■ The section of the Act that is at issue in this case reads as follows:

> "Every common carrier by railroad while engaging in commerce between any of the several States *** shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce *** for such injury or death resulting in whole or in part from the *negligence* of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track roadbed, works, boats, wharves, or other equipment." (Emphasis added.) 45 U.S.C.A. § 51 (West 1986).

■ Much debate about this section of the Act has centered around the word "negligence" and its meaning. It is clear that Congress enacted the Act in 1906 to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees. A primary purpose of the Act was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases. The Act expressly prohibits covered carriers from adopting any regulation, or entering into any contract, to limit their liability under the Act. The coverage of the statute is defined in broad language, which has been construed even more broadly. The United States Supreme Court has recognized generally that the Act is a broad remedial statute, and the Court has adopted a " 'standard of liberal construction in order to accomplish [Congress's] objects.' " *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62, 94 L. Ed. 2d 563, 571, 107 S. Ct. 1410, 1414 (1987), quoting *Urie v. Thompson*, 337 U.S. 163, 180, 93 L. Ed. 1282, 1298, 69 S. Ct. 1018, 1030 (1949).

An overview of the relevant case law is necessary in order to answer the aforementioned questions. In *Buell*, 480 U.S. 557, 94 L. Ed. 2d 563, 107 S. Ct. 1410, a railroad carman filed a complaint pursuant to the Act, alleging that the railroad had condoned his harassment by fellow employees, causing him to suffer an emotional breakdown. The railroad moved for summary judgment, and the United States District Court for the Eastern District of California granted summary judgment in favor of the railroad. The plaintiff appealed. The United States Court of Appeals for the Ninth Circuit reversed and remanded. *Buell v. Atchison, Topeka & Santa Fe Ry. Co.*, 771 F.2d 1320 (9th Cir. 1985). On a writ of *certiorari*, the United

States Supreme Court, in relevant part, held that the record was insufficient to determine whether purely emotional injury was compensable under the Act. When the United States Supreme Court made the aforementioned determination, it stated:

"The question whether 'emotional injury' is cognizable under the [Act] is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case. Assuming, as we have, that *** jurisprudence [under the Act] gleans guidance from common-law developments, see *Urie v. Thompson*, 337 U.S. at 174, 93 L. Ed. 1282, 69 S. Ct. 1018, whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity. For example, while most States now recognize a tort of intentional infliction of emotional distress, they vary in the degree of intent required to establish liability[ ] and the level of physical manifestation of the emotional injury required to support recovery. Moreover, some States consider the context and the relationship between the parties significant, *placing special emphasis on the workplace.* *** In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive 'yes' or 'no' answer. As in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand." (Emphasis added.) *Buell*, 480 U.S. at 568-70, 94 L. Ed. 2d at 575-76, 107 S. Ct. at 1417-18.

The United States Court of Appeals for the Sixth Circuit, in *Adkins v. Seaboard System R.R.*, 821 F.2d 340 (6th Cir. 1987) (railroad worker alleged company conspiracy to dismiss him), refused to permit recovery under the Act for intentional infliction of emotional distress. The Sixth Circuit concluded that the language of *Buell* applies only to *negligent* conduct giving rise under the Act to claims of emotional injury. See also *Antalek v. Norfolk & Western Ry. Co.*, 742 F.2d 1454 (6th Cir. 1984) (court held that claim for intentional infliction of emotional distress was not cognizable under the Act).

The United States Court of Appeals for the First Circuit rendered its decision on this subject in *Moody*, 823 F.2d 693. In *Moody*, a railroad employee brought an action against the railroad pursuant to the Act, alleging that the railroad negligently injured him through continued harassment, resulting in fatigue and depression, which in turn resulted in angina attacks. The United States District Court for the District of Maine granted the railroad's motion for summary judgment (*Moody v. Maine Central R.R. Co.*, 620 F. Supp. 1472 (D. Me. 1985)), and the plaintiff appealed. The court of appeals held that

the employee failed to establish that there was a causal connection between his condition and any conduct on the part of the railroad. The *Moody* court cited the aforementioned language from the *Buell* decision and stated as follows: "We discern from the *Buell* opinion an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open." *Moody*, 823 F.2d at 694. The *Moody* court noted that some railroads have argued that allowing actions under the Act, even though arbitration is available under the Railway Labor Act (45 U.S.C. § 153 (1986)), would open the floodgates of litigation (*Moody*, 823 F.2d at 694); however, the *Buell* court addressed that argument by stating, "This parade of horribles mistakenly assumes that a significant percentage of employees bringing grievances suffer *the type of severe emotional injury that has generally been required to establish liability for purely emotional injury *** and that a significant percentage of employees are subject to the type of unconscionable abuse which is a prerequisite to recovery.*" (Emphasis added.) *Buell*, 480 U.S. at 566 n.13, 94 L. Ed. 2d at 574 n.13, 107 S. Ct. at 1416 n.13. Hence, it is clear that the *Moody* and *Buell* decisions implicitly hold that one must suffer either (1) severe emotional injury or (2) unconscionable abuse in order to recover for wholly emotional injuries under the Act.

On January 25, 1989, the United States Court of Appeals for the Fifth Circuit, in *Netto v. Amtrak*, 863 F.2d 1210 (5th Cir. 1989), rendered its decision on this issue. In *Netto*, the plaintiff, an Amtrak employee, brought an action alleging that Amtrak had violated certain provisions of the Act. Specifically, the plaintiff asserted that he suffered emotional injuries that were caused by Amtrak's harassment of him during an investigation into an alleged rape for which the plaintiff had been the investigator. The United States District Court for the Eastern District of Louisiana entered summary judgment against the plaintiff, and he appealed. The *Netto* court stated that the United States Supreme Court in *Buell* "appears to invite the lower courts to parse the [Act] in light of the specific facts of later cases." *Netto*, 863 F.2d at 1213. The *Netto* court specifically stated that it declined to determine whether a plaintiff may recover for purely emotional injuries under the Act. The *Netto* court did, however, make that decision implicitly when it stated: "[E]ven if we were to allow such claims, Netto's failure to adduce any evidence *to establish an essential element of his claim—unconscionable or outrageous conduct* by Amtrak—would preclude recovery." (Emphasis added.) *Netto*, 863 F.2d at 1214.

Finally, in June of 1994, the United States Supreme Court in *Consolidated R. Corp. v. Gottshall*, 512 U.S. 532, 129 L. Ed. 2d 427,

114 S. Ct. 2396 (1994), made it clear that a claim for *negligent* infliction of emotional distress is cognizable under the Act.

There is no question that the Act has been found to apply to intentional torts. See *Jamison v. Encarnacion*, 281 U.S. 635, 641, 74 L. Ed. 1082, 1086, 50 S. Ct. 440, 442 (1930); *Civil v. Waterman Steamship Corp.*, 217 F.2d 94, 98 (2d Cir. 1954); *Besta v. Consolidated R. Corp.*, 580 F. Supp. 869 (S.D.N.Y. 1984). Thus, the argument that the Act applies only to *negligence* cases would be an anomaly. In fact, in *Jamison*, 281 U.S. at 641, 74 L. Ed. at 1086, 50 S. Ct. at 442-43, the United States Supreme Court recognized that the intentional tort of assault would be cognizable as an action under the Act. The *Jamison* court stated:

> " 'Negligence' is a word of broad significance and may not readily be defined with accuracy. Courts usually refrain from attempts comprehensively to state its meaning. While liability arises when one suffers injury as the result of any breach of duty owed him by another chargeable with knowledge of the probable result of his conduct, actionable negligence is often deemed—and we need not pause to consider whether rightly[—]to include other elements. Some courts call willful misconduct evincing intention or willingness to cause injury to another gross negligence. [Citations.] \*\*\* As unquestionably the employer would be liable if plaintiff's injuries had been caused by mere inadvertence or carelessness on the part of the offending foreman, it would be unreasonable and in conflict with the purpose of Congress to hold that the assault, a much graver breach of duty, was not negligence within the meaning of the act." *Jamison*, 281 U.S. at 641, 74 L. Ed. at 1086, 50 S. Ct. at 442-43.

■ After reviewing the aforementioned cases, we are persuaded that the answer to the first question that we must answer—whether a claim for intentional infliction of emotional distress is recognized under the Act—is "yes." Since the United States Supreme Court made it clear in *Gottshall* that a claim for negligent infliction of emotional distress is recognized under the Act, we have no problem stating that a claim for intentional infliction of emotional distress is recognized under the Act. This is so because the employer would unquestionably be liable if a plaintiff's injuries were the result of negligence and it would be unreasonable and in conflict with the purpose of Congress to hold that intentional infliction of emotional distress, a much graver breach of duty, would not be considered "negligence" within the meaning of the Act. See *Jamison*, 281 U.S. at 641, 74 L. Ed. at 1086, 50 S. Ct. at 442-43.

Now we must determine the second question—whether plaintiff must plead or offer proof of physical contact or the threat of physical

contact before he can recover for intentional infliction of emotional distress.

In *Lancaster*, 773 F.2d at 813, the Seventh Circuit Court of Appeals determined that the Act does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact. In reaching its decision, the *Lancaster* court admitted that the Act does reach some intentional torts. See *Jamison*, 281 U.S. 635, 74 L. Ed. 1082, 50 S. Ct. 440; *Civil*, 217 F.2d at 98; *Besta*, 580 F. Supp. 869. The *Lancaster* court stated that the Act's main purpose was to eliminate a number of traditional defenses to tort liability, such as contributory negligence, contractual waiver of liability, the fellow-servant rule, and assumption of risk. The *Lancaster* court stated that all of the foregoing are defenses to negligence, not intentional wrongdoing. Then the *Lancaster* court stated, "Nevertheless, the applicability of the [Act] to (at least some) intentional torts is too well settled to be questioned any longer." *Lancaster*, 773 F.2d at 813. The *Lancaster* court noted, however, that it could find no intentional tort cases where the physical dimension was lacking. Although the *Lancaster* court recognized that in *Slaughter v. Atlantic Coast Line R.R. Co.*, 302 F.2d 912 (D.C. Cir. 1962), the court allowed a suit under the Act for false arrest, it explained the rationale of that decision by stating that limiting a person's freedom of movement by arrest or imprisonment was a form of physical interference.

Next, the United States Court of Appeals for the Seventh Circuit rendered its decision in *Hammond*, 848 F.2d at 95, on June 6, 1988. In that decision, the Seventh Circuit reiterated its holding in *Lancaster* that "the [Act] does not create a cause of action for tortious harms brought about by acts that lack any physical contact or threat of physical contact." *Hammond*, 848 F.2d at 96.

In *Adams*, the plaintiff brought suit against his former employer, seeking to recover damages for emotional injury under the Act. Specifically, the plaintiff claimed that the company negligently deprived him of an emotionally safe workplace. The United States District Court for the Eastern District of Tennessee denied the plaintiff's claim, and the plaintiff appealed. The Sixth Circuit Court of Appeals held that the plaintiff could not recover damages for emotional injury under the Act because he failed to establish either a breach of the employer's duty to provide an emotionally safe workplace or the foreseeability of his emotional injury. In so holding, however, the *Adams* court reviewed the language of *Buell* and *Netto* and determined, "We similarly hold that an employer has not breached its duty to provide an emotionally safe workplace unless the employer (acting through its agents) engages in 'unconscionable abuse' of an employee." *Adams*, 899 F.2d at 540.

In July of 1991, the Seventh Circuit Court of Appeals in *Ray* reiterated its previous holdings in *Lancaster* and *Hammond* that an emotional injury must result from physical contact or the threat of physical contact in order to be compensable under the Act. *Ray*, 938 F.2d 704.

In *Gottshall*, where the United States Supreme Court determined that a claim for negligent infliction of emotional distress is cognizable under the Act, the Court adopted the zone-of-danger test, which limits recovery for emotional injury to those plaintiffs who either sustain a physical impact as a result of the defendant's negligence or are placed in immediate risk of physical impact by that negligence. In making this determination, however, the *Gottshall* court stated in footnote 2 that its decision was "not concerned *** with the separate tort of intentional infliction of emotional distress." *Gottshall*, 512 U.S. at 541 n.2, 129 L. Ed. 2d at 439 n.2, 114 S. Ct. at 2403 n.2.

It is important to note that while the traditional rule was that a plaintiff could not recover for mental injuries unconnected with actual or threatened impact, the majority of jurisdictions now appear to have abandoned that rule. See *Gates v. Richardson*, 719 P.2d 193, 195 n.1 (Wyo. 1986) (citing cases from 37 jurisdictions); Restatement (Second) of Torts §§ 312, 436, 436A (1965). One leading commentary states, "In the great majority of the cases allowing recovery[,] the genuineness of the mental disturbance has been evidenced by resulting physical illness of a serious character ***." W. Keeton, Prosser & Keeton on Torts § 12, at 64 (5th ed. 1984). Even the American Law Institute urges that as long as the distress is "genuine and severe," bodily harm should not be required. Restatement (Second) of Torts § 46, Comment *k*, at 78 (1965). We agree.

In fact, the United States Supreme Court, in note 16 in *Buell*, 480 U.S. at 568 n.16, 94 L. Ed. 2d at 575 n.16, 107 S. Ct. at 1417 n.16, stated, "The tort of intentional infliction of mental distress as described in § 46 of the Restatement [(Second) of Torts] can be safely characterized as the general rule in the United States." Section 46 of the Restatement (Second) of Torts reads as follows:

"§ 46. Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46, at 71 (1965).

It is clear from section 46 and Comment *d* to section 46 that liability should only be imposed where defendant's conduct has been extreme and outrageous. Restatement (Second) of Torts, § 46, Com-

ment *d*, at 72-73 (1965). This liability, however, clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Our society's rough edges are still in need of filing down, and plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind. The law must not intervene in every case where someone's feelings are hurt. We must still have the freedom to express an unflattering opinion, and a safety valve must be left through which "irascible tempers may blow off relatively harmless steam." Restatement (Second) of Torts § 46, Comment *d*, at 73 (1965). See *Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498 (1994); *McGrath v. Fahey*, 126 Ill. 2d 78, 533 N.E.2d 806 (1988).

■ We agree with section 46 of the Restatement (Second) of Torts. Hence, the answer to the second question—whether plaintiff must plead and prove physical contact or the threat of physical contact before he can recover for intentional infliction of emotional distress under the Act—is "no." As the Restatement (Second) of Torts states, in order for a plaintiff to establish liability for intentional infliction of emotional distress, he must show that defendant has, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to the plaintiff.

In so holding, we recognize that the United States Seventh Circuit Court of Appeals, in *Ray* (938 F.2d at 705), *Lancaster* (773 F.2d 807), and *Hammond* (848 F.2d at 96-97), determined that the Act does not create a cause of action for tortious harms, including intentional infliction of emotional distress, brought about by acts that lack any physical contact or threat of physical contact. According to defendant's attorney, this court has no choice but to follow the aforementioned Seventh Circuit Court of Appeals' decisions. In oral argument, defense counsel said, "You don't get to decide [whether this court should follow the Seventh Circuit's decisions]" because this court is "obligated to follow the Seventh Circuit['s] decisions." Defendant cited *Dungey v. United States Steel Corp.*, 148 Ill. App. 3d 484, 499 N.E.2d 545 (1986), in support of its position. Based upon this reasoning, defense counsel then stated that since the Seventh Circuit Court of Appeals has determined that the Act does not create a cause of action for tortious harms, including intentional infliction of emotional distress, brought about by acts that lack any physical contact or threat of physical contact, this court is obligated to follow the Seventh Circuit Court of Appeals' decisions pursuant to the *Dungey* decision and to declare the same holding as the aforementioned Seventh Circuit decisions. We disagree.

In *Dungey*, the issue was whether this court should follow the Seventh Circuit Court of Appeals' decisions when interpreting provisions of the Jones Act. The *Dungey* court stated as follows:

"The United States district courts sitting in Illinois would be obliged to follow *Johnson* [*v. John F. Beasley Construction Co.*, 742 F.2d 1054 (7th Cir. 1984)], there being no contrary holding of the United States Supreme Court which would be binding on all inferior Federal courts. [Citations.] It would be anomalous that different rules for determining seaman status would turn on whether a cause was filed in the Federal district courts in Illinois or in the Illinois circuit courts, there being concurrent jurisdiction in actions arising under the Jones Act. [Citations.]

We *choose* to adopt the reasoning of *Johnson* [citation]." (Emphasis added.) *Dungey*, 148 Ill. App. 3d at 495-96, 499 N.E.2d at 553.

Hence, there is no doubt that the *Dungey* decision does not mandate that this court follow the Seventh Circuit Court of Appeals as defendant represented in oral argument. In fact, the *Dungey* decision merely determined, out of comity, that it would follow the Seventh Circuit Court of Appeals' decision. This is evidenced by the sentence that states, "We *choose* to adopt the reasoning of *Johnson*." (Emphasis added.) *Dungey*, 148 Ill. App. 3d 495-96, 499 N.E.2d at 553. If we had no choice but to follow the Seventh Circuit Court of Appeals, then how could we *choose* to adopt their reasoning?

In making the aforementioned determinations, we recognize that decisions of the federal courts interpreting a federal act are controlling upon Illinois courts, "in order that the act be given uniform application." *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335, 662 N.E.2d 397, 403 (1996). Since we have based our decision on United States Supreme Court precedent, one of those decisions postdating the foregoing Seventh Circuit decisions, it is clear that a claim for intentional infliction of emotional distress is recognized pursuant to the Act and that section 46 of the Restatement (Second) of Torts "can be safely characterized as the general rule in the United States" (see *Buell*, 480 U.S. at 568 n.16, 94 L. Ed. 2d at 575 n.16, 107 S. Ct. at 1417 n.16). We see no reason to depart from *stare decisis*.

Certified question answered; order affirmed; cause remanded.

GOLDENHERSH and CHAPMAN, JJ., concur.